2008-NMSC-026

183 P.3d 922

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**William FUNDERBURG, Defendant–Respondent.**

**No. 30,180.**

Supreme Court of New Mexico.

April 15, 2008.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} This appeal involves a police officer's authority, after lawfully finding drugs or paraphernalia in the possession of a car's passenger, to detain and question the driver about the presence of other drugs in the car, and then ask for consent to search the car. A divided panel of the Court of Appeals held that the officer impermissibly expanded the scope of the stop because he lacked sufficient, individualized suspicion about the driver. *State v. Funderburg*, 2007–NMCA–021, ¶ 22, 141 N.M. 139, 151 P.3d 911, *cert. granted*, 2007–NMCERT–001, 141 N.M. 164, 152 P.3d 151. Judge Sutin dissented in part, finding that the officer's questioning of the driver was reasonable based on the passenger's possession of drugs in the vehicle. *Id.* ¶ 30 (Sutin, J., dissenting). We agree with the dissent, and conclude that the officer's limited question posed to the driver and subsequent consensual search of the vehicle were constitutionally reasonable. We therefore reverse the Court of Appeals and hold that the district court properly denied Defendant's motion to suppress.

## BACKGROUND

{2} On January 19, 2004, Officer James Minter, a Ruidoso Downs police officer, responded to a call from a local casino regarding a potential check forgery. A few hours later, the casino called the police station again and stated that the suspect, identified as Larry Sinclair, had returned and was leaving in a dark-colored sedan. Officer Minter, who was in the vicinity, returned to the casino and saw a vehicle matching that description leaving the parking lot.

{3} Officer Minter initiated a traffic stop based on his suspicion that Sinclair was in the dark sedan. Two men were seated in the front of the vehicle and a woman was a

passenger in the rear of the vehicle. The officer asked the driver for his driver's license and proof of insurance, and also requested identification of the passenger. After examining these documents, Officer Minter realized that Sinclair, the alleged forger, was the front passenger, and the driver was William Funderburg, Defendant in this appeal.

{4} Officer Minter asked Sinclair to get out of the vehicle and ordered him to the back of the car where the officer questioned him about the check forgery. Officer Minter testified that during the questioning Sinclair seemed nervous and kept putting his hand in his right front pocket. Officer Minter asked Sinclair about the contents of his pocket and Sinclair admitted that he had a marijuana pipe, which the officer then retrieved. Officer Minter testified that the pipe contained residue that he recognized as marijuana. The officer then arrested Sinclair for possession of drugs and drug paraphernalia and placed him in the patrol car. Sinclair's arrest is not at issue in this appeal.

{5} After arresting Sinclair, the officer returned to Defendant's car. Officer Minter testified: "Seeing how [Sinclair] had drugs and drug paraphernalia on him, I went to the driver, asked the driver if there was anything *in the vehicle* that I needed to know about." Defendant said no, at which time the officer asked Defendant if he could search the car. Defendant responded that he did not care. Officer Minter, in response to defense counsel's question about why he asked Defendant for consent to search the car, testified that he wanted to make sure there were no drugs or drug paraphernalia in the vehicle. During the consensual search, the officer found a pipe, wrapped in a red rag, between the rear passenger seat and the center console. The pipe contained a large amount of white powder that tested positive for methamphetamine. Defendant initially denied owning the pipe but eventually admitted that the pipe was his and that it contained methamphetamine. Officer Minter then arrested Defendant.

{6} Defendant was charged with one count of possession of methamphetamine, contrary to NMSA 1978, Section 30–31–23(D) (2005),

and one count of use or possession of drug paraphernalia, contrary to NMSA 1978, Section 30–31–25.1 (2001). Defendant filed a motion to suppress the evidence, arguing that Officer Minter lacked reasonable suspicion to stop the vehicle, and then impermissibly expanded the scope of the initial detention when the officer continued to detain Defendant after Sinclair's arrest. The district court held an evidentiary hearing and denied the motion to suppress. Defendant entered a conditional plea of no contest on the paraphernalia charge, a misdemeanor, and the State dismissed the possession charge, a felony. At sentencing, Defendant was given a deferred sentence of three hundred and sixty-four days and was placed on supervised probation. Defendant reserved the right to appeal the district court's denial of his motion to suppress the evidence.

{7} Before the Court of Appeals, Defendant renewed his arguments that the officer did not have reasonable suspicion to stop the vehicle and then unlawfully expanded the scope of the stop. *See Funderburg*, 2007–NMCA–021, 141 N.M. 139, 151 P.3d 911. The Court of Appeals unanimously held that the officer had reasonable suspicion to stop Defendant's vehicle, based upon information received about the suspected forger. *Id.* ¶ 9. However, only two members of the panel agreed with Defendant that the officer unlawfully expanded the scope of the stop. *Id.* ¶ 22. The majority concluded that "any reason to detain Defendant terminated at the latest once the officer checked Defendant's paperwork and identified Sinclair as the suspect." *Id.*

{8} Judge Sutin dissented in part, noting that one could reasonably infer "that the officer expanded his investigation from Sinclair's possession of drugs and drug paraphernalia to other possible drugs within the vehicle of which Defendant [the driver] may have had knowledge." *Id.* ¶ 27 (Sutin, J., dissenting). While he acknowledged that "the inquiry in question may not have been justified based directly on the reason Defendant's vehicle was stopped," Judge Sutin found that the officer's limited questioning of Defendant was reasonable based on the passenger's possession of drugs. *Id.* ¶ 30. Af-

ter weighing any invasion of Defendant's privacy against the interests of the State, the dissent concluded that the motion to suppress was properly denied. *Id.*

{9} On certiorari to this Court, the State suggests that Defendant's continued detention was lawful because the officer developed reasonable suspicion that other drugs or drug paraphernalia might be in the car based on the passenger's possession of drug paraphernalia. In addressing this point, we conclude that the officer lawfully questioned Defendant and requested consent to search because the officer reasonably suspected that drugs or other drug paraphernalia might be in the car, as opposed to on Defendant's person. This suspicion, in turn, justified a brief detention long enough to ask Defendant about drugs in the car (not on his person) and then to ask for consent to search the vehicle to confirm or dispel that suspicion.

## STANDARD OF REVIEW

{10} "Appellate review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. When, as in the case at bar, there are no findings of fact and conclusions of law, an appellate court "will draw all inferences and indulge all presumptions in favor of the district court's ruling." *State v. Jason L.,* 2000–NMSC–018, ¶ 11, 129 N.M. 119, 2 P.3d 856. "To determine whether the detention was justified, we review the totality of the circumstances as a matter of law." *State v. Van Dang,* 2005–NMSC–033, ¶ 14, 138 N.M. 408, 120 P.3d 830.

> [D]e novo review tends to unify precedent and will come closer to providing law enforcement officers with a defined "set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement."

*Ornelas v. United States,* 517 U.S. 690, 697–98, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (quoting *New York v. Belton,* 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)).

## DISCUSSION

{11} The parties do not dispute the facts of the traffic stop, and specifically Defendant did not appeal that part of the Court of Appeals opinion upholding the initial stop of the vehicle. The parties do, however, contest whether Officer Minter lawfully detained Defendant after determining that Sinclair, not Defendant, was the forgery suspect. If, as the State argues, Defendant was lawfully detained, his consent was valid and the district court correctly denied the motion to suppress. If Defendant was unlawfully detained, as he contends, his consent was tainted by the invalid detention and the evidence must be suppressed.

{12} Both the United States Constitution and the New Mexico Constitution protect a citizen against unreasonable searches and seizures. U.S. Const. amend. IV; N.M. Const. art. II, § 10. Defendant did not argue below, and does not argue to this Court, that the New Mexico Constitution provides any greater protection than the Federal Constitution in the context of this case. Therefore, "we assume without deciding that both constitutions afford equal protection to individuals against unreasonable seizures in this context, and we analyze the constitutionality of the seizure under one uniform standard." *State v. Ochoa,* 2004–NMSC–023, ¶ 6, 135 N.M. 781, 93 P.3d 1286 (citing *State v. Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1).

{13} When an officer stops an automobile and detains the occupants for an investigatory stop, the officer has effected a "seizure." *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (citing *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). New Mexico courts follow the two-part test set forth in *Terry* to analyze the reasonableness of an officer's actions during a traffic stop. *State v. Duran,* 2005–NMSC–

034, ¶ 23, 138 N.M. 414, 120 P.3d 836. Under *Terry*, "the officer's action [must have been] justified at its inception, and . . . it [must have been] reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868; *accord Duran*, 2005–NMSC–034, ¶ 23, 138 N.M. 414, 120 P.3d 836.

{14} An officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention or, without a valid factual basis, makes inquiries about other criminal activity unrelated to the traffic violation. *Duran*, 2005–NMSC–034, ¶ 35, 138 N.M. 414, 120 P.3d 836 ("[A]ll questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification for the stop *or* are supported by reasonable suspicion." (emphasis added)). Reasonable suspicion develops when the officer becomes "aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (quoted authority omitted).

{15} The term "reasonable suspicion" does not lend itself "to a neat set of legal rules." *Ornelas*, 517 U.S. at 695–96, 116 S.Ct. 1657 (quoted authority omitted). The United States Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Id.* at 696, 116 S.Ct. 1657 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621, (1981)). We agree that reasonable suspicion is a "commonsense, nontechnical conception[ ]," *id.* at 695, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act. *See Urioste*, 2002–NMSC–023, ¶ 10, 132 N.M. 592, 52 P.3d 964 ("A police officer cannot forcibly stop an individual for purposes of investigation merely on the basis of an 'inchoate and unparticularized suspicion or hunch' that criminal activity may be afoot." (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868) (emphasis omitted)).

{16} A reviewing court must "necessarily take into account the evolving circumstances with which the officer [was] faced," *Duran*, 2005–NMSC–034, ¶ 36, 138 N.M. 414, 120 P.3d 836 (quoted authority omitted), when determining whether the officer had "reasonable suspicion that criminal activity may have been afoot," *id.* ¶ 38. An officer's continued detention of a suspect may be reasonable if the detention represents a graduated response to the evolving circumstances of the situation. *See United States v. Place*, 462 U.S. 696, 709 n. 10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (rejecting a "hard-and-fast" time limit for *Terry* stops because "[s]uch a limit would undermine the . . . important need to allow authorities to graduate their responses to the demands of any particular situation").

**Officer Minter's Discovery of Passenger's Drug Activity Supported a Reasonable Suspicion that Other Drugs or Paraphernalia May Have Been in the Car**

{17} Our courts have yet to answer the precise question of when a passenger's criminal activity can give rise to a reasonable suspicion that drugs or drug paraphernalia may be in the car. And, if the officer has reasonable suspicion about the contents of the car, our courts have yet to consider when the officer may briefly detain the car and its driver so as to ask limited questions to confirm or dispel the suspicion and request consent to search the car. Nor has our research revealed any federal cases directly on point.

{18} Unlike the present case, the usual traffic stop that escalates to a drug arrest generally presents one of two scenarios. In the first scenario, the driver is the only occupant of the vehicle, and thus any reasonable suspicion arises as a result of the driver's actions. *See United States v. Alcaraz–Arellano*, 441 F.3d 1252, 1258–61 (10th Cir.2006). In the second scenario, both the driver and the passenger act suspiciously, thus giving rise to a reasonable suspicion about either the driver alone or both the driver and the passenger. *See United States v. Gill*, 513 F.3d 836, 844–45 (8th Cir.2008) (detention of both driver and passenger/owner of vehicle

supported by reasonable suspicion); *Duran,* 2005–NMSC–034, ¶ 37, 138 N.M. 414, 120 P.3d 836 (driver's detention lawful based upon reasonable suspicion arising from behavior of both passenger and driver).

{19} Here, by contrast, the officer may have had reasonable suspicion about the contents of the car, yet he had no suspicion directed toward the driver personally. We must therefore decide whether the officer's lack of suspicion as to the driver personally made it constitutionally unreasonable for the officer to detain the driver—the one person presumably in control of the car—only long enough to (1) inquire of the driver about the car's contents, and (2) request consent to search the car. Despite the lack of cases directly on point, recent opinions from this Court provide a solid analytical framework for our discussion.

{20} We begin with two cases where a traffic stop evolved into an arrest for drugs, *Van Dang,* 2005–NMSC–033, 138 N.M. 408, 120 P.3d 830,[1] and *Duran,* 2005–NMSC–034, 138 N.M. 414, 120 P.3d 836. In each case, after stopping a vehicle for a traffic violation, the officer questioned the driver and the passenger about their travel plans, and received conflicting information. *Van Dang,* 2005–NMSC–033, ¶¶ 1, 16, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶¶ 3, 8–9, 138 N.M. 414, 120 P.3d 836. Additionally, in each case the officer's suspicions were further aroused by other circumstances surrounding the stop. In *Van Dang,* for example, the officer noted that the driver's name did not appear on the rental contract for the car he was driving. 2005–NMSC–033, ¶ 1, 138 N.M. 408, 120 P.3d 830. In *Duran,* the officer asked the driver additional questions about her recent purchase of the car, in response to which the driver provided either inaccurate or incomplete answers. 2005–

NMSC–034, ¶¶ 11–13, 138 N.M. 414, 120 P.3d 836.

{21} In each case, after questioning the driver and passenger, the officer then asked the driver if there were drugs in the car. *Van Dang,* 2005–NMSC–033, ¶ 1, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 15, 138 N.M. 414, 120 P.3d 836. When the driver responded in the negative, the officer asked the driver for consent to search the car. *Van Dang,* 2005–NMSC–033, ¶ 1, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 15, 138 N.M. 414, 120 P.3d 836. The search of the vehicle in each case revealed drugs. *Van Dang,* 2005–NMSC–033, ¶ 1, 138 N.M. 408, 120 P.3d 830 (20,000 pills of ecstasy); *Duran,* 2005–NMSC–034, ¶ 16, 138 N.M. 414, 120 P.3d 836 (thirteen vacuum-sealed bags of marijuana in the gas tank). In *Duran,* the officer arrested both the driver and the passenger. 2005–NMSC–034, ¶ 16, 138 N.M. 414, 120 P.3d 836.

{22} The drivers in both cases filed motions to suppress the evidence, which the district court denied. *Van Dang,* 2005–NMSC–033, ¶¶ 2–3, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 17, 138 N.M. 414, 120 P.3d 836. In each case, the Court of Appeals reversed the district court, concluding that the officer impermissibly expanded the scope of the stop because the officer did not articulate a reasonable suspicion of criminal activity to justify continued detention. *Van Dang,* 2004–NMCA–067, 135 N.M. 719, 93 P.3d 1; *State v. Duran,* 2003–NMCA–112, 134 N.M. 367, 76 P.3d 1124.

{23} In each case, we reversed the Court of Appeals and upheld the decision of the district court to deny the motion to suppress. *See Van Dang,* 2005–NMSC–033, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, 138 N.M. 414, 120 P.3d 836. We reiterated "that all questions asked by police officers during a traffic stop must be analyzed to

---

1. Defendant relies on *Van Dang* throughout his answer brief filed in this Court. Significantly, however, Defendant cites to the Court of Appeals opinion, *State v. Dang,* 2004–NMCA–067, 135 N.M. 719, 93 P.3d 1, rather than this Court's opinion, where we reversed the Court of Appeals. We note that the caption of the case in the Court of Appeals is *State v. Dang,* rather than *State v. Van Dang.* In this Opinion, however, we refer to the Court of Appeals opinion as *State v. Van*

*Dang.* We issued our opinion in *Van Dang* on August 31, 2005, and defense counsel filed its answer brief on June 22, 2007. Additionally, the Court of Appeals in *Funderburg* distinguished this Court's opinion in *Van Dang* from the facts of *Funderburg,* which should have alerted Defendant that the Court of Appeals opinion in *Van Dang* was no longer good law. Thus, we do not address Defendant's arguments based upon the earlier *Van Dang* opinion.

ensure they are reasonably related to the initial justification ... *or* are supported by reasonable suspicion" that may unfold during the investigation or traffic stop. *Duran,* 2005–NMSC–034, ¶ 35, 138 N.M. 414, 120 P.3d 836 (emphasis added). We stated that a court should consider "both the length of the detention and the manner in which it is carried out" when determining whether a particular detention is lawful. *Id.* (quoted authority omitted). We then analyzed the officer's continued detention and questioning of the driver to determine reasonableness under the circumstances. *Van Dang,* 2005–NMSC–033, ¶¶ 13–16, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶¶ 37–41, 138 N.M. 414, 120 P.3d 836.

{24} After finding that the officers in both cases lawfully questioned the drivers and passengers about their travel plans, *Van Dang,* 2005–NMSC–033, ¶ 15, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 37, 138 N.M. 414, 120 P.3d 836, we then turned to an examination of whether the officers had impermissibly questioned the drivers and the passengers about drugs. *Van Dang,* 2005–NMSC–033, ¶ 16, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 38, 138 N.M. 414, 120 P.3d 836. We noted that questions about drugs, weapons, or large amounts of money are "a separate and distinct line of questioning apart from and outside the scope of the initial justification for the stop," and must be supported by "a showing of reasonable suspicion" of criminal activity other than that which gave rise to the initial stop. *Duran,* 2005–NMSC–034, ¶ 41, 138 N.M. 414, 120 P.3d 836. Again, we recognized that reasonable suspicion can arise out of the evolving circumstances surrounding a traffic stop and may be based upon reasonable inferences drawn from those circumstances. *Van Dang,* 2005–NMSC–033, ¶ 16, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 38, 138 N.M. 414, 120 P.3d 836.

{25} In each case, this Court concluded that the questioning about drugs was lawful, despite the absence of any actual knowledge of criminal activity in the car. We determined that the officers had developed reasonable suspicion that drugs might be in the car based on the totality of the circumstances, including the conflicting information they received from the drivers and the passengers. *Van Dang,* 2005–NMSC–033, ¶ 16, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 40, 138 N.M. 414, 120 P.3d 836. Once the officers had reasonable suspicion that criminal activity may be occurring in the car, they then sought consent from the driver to search the car. *Van Dang,* 2005–NMSC–033, ¶ 1, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 15, 138 N.M. 414, 120 P.3d 836. Because the questions about drugs did not impermissibly expand the scope of the stop, we concluded in each case that the driver's consent to search the vehicle was valid. *Van Dang,* 2005–NMSC–033, ¶¶ 16, 17, 138 N.M. 408, 120 P.3d 830; *Duran,* 2005–NMSC–034, ¶ 42, 138 N.M. 414, 120 P.3d 836.

{26} These two recent opinions from this Court offer substantial guidance and inform our analysis of the case before us. Although Defendant would have us read *Duran* as limiting an officer during a traffic stop to only those questions supported by the justification for the original stop, in this case the alleged forgery, we decline to do so. Indeed, we expressly rejected such a narrow reading in *Duran,* holding instead that evolving circumstances facing an officer may permit limited questioning relating to travel plans and drugs. *Duran,* 2005–NMSC–034, ¶¶ 35, 36, 138 N.M. 414, 120 P.3d 836. Similarly, in *Van Dang,* we concluded that the officer's questions about travel plans, while not directly related to the speeding ticket, became reasonable as the officer investigated whether the rental car was stolen. *Van Dang,* 2005–NMSC–033, ¶ 15, 138 N.M. 408, 120 P.3d 830.

{27} Thus, an officer may lawfully ask "minimally intrusive questions to confirm or dispel his initial suspicion," *Duran,* 2005–NMSC–034, ¶ 37, 138 N.M. 414, 120 P.3d 836, arising from the traffic stop, as long as the questions are reasonable and "intrude on a person's liberty as little as possible under the circumstances," *id.* ¶ 36. "Put another way, when considering whether a detention is reasonably related in scope to the circumstances of the case, a reviewing court must consider whether 'the officer's

subsequent actions were fairly responsive to the emerging tableau—the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.'" *People v. Williams,* 472 Mich. 308, 696 N.W.2d 636, 641 n. 9 (2005) (quoting *United States v. Chhien,* 266 F.3d 1, 6 (1st Cir.2001)). With these principles in mind, we now examine whether Officer Minter's suspicion that the car driven by Defendant might contain drugs or other drug paraphernalia was reasonable, such that Officer Minter could lawfully detain the car and briefly question the driver about those drugs and request consent to search.

{28} In this case, as in *Duran* and *Van Dang,* Officer Minter's actions represent a graduated response to the evolving nature of the stop. Officer Minter first questioned Sinclair about the forgery and developed a reasonable suspicion that Sinclair had something in his pocket. Officer Minter then acted on that suspicion by questioning Sinclair about the contents of his pocket, and he arrested Sinclair based on Sinclair's voluntary admission about the pipe. Once Officer Minter discovered that Sinclair had committed a drug crime, he could reasonably suspect that other evidence of the passenger's crime might be found in the car. In fact, Officer Minter had more reason to suspect that drugs might be found in the car than did the officers in either *Duran* or *Van Dang,* because he had actual knowledge of drug activity by an occupant of the vehicle. *See also Thornton v. United States,* 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia & Ginsberg, JJ., concurring) (noting that, in the context of a search incident to arrest, because "petitioner was lawfully arrested for a drug offense, [i]t was reasonable for [the officer] to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within his vicinity at the time of arrest").

{29} Significantly, Officer Minter did not turn his attention to the car prior to finding drugs on the passenger. Moreover, even after finding the drugs on the passenger, Officer Minter did not question the driv-er as a suspect. Rather, he asked questions only about the contents of the car, not Defendant individually, and then asked for consent to search the car, not Defendant's person.

{30} In debating the question of reasonable suspicion to ask these two questions of Defendant, as driver, the Court of Appeals focused on two of its precedents, *State v. Patterson,* 2006–NMCA–037, 139 N.M. 322, 131 P.3d 1286, and *State v. Williamson,* 2000–NMCA–068, 129 N.M. 387, 9 P.3d 70. In *Patterson* and a consolidated case, *State v. Swanson,* 139 N.M. 322, 131 P.3d 1286, the Court of Appeals held that evidence obtained from passengers who were detained as part of investigations connected to other occupants' illegal possession of drugs should have been suppressed. *Patterson,* 2006–NMCA–037, ¶¶ 28–30, 139 N.M. 322, 131 P.3d 1286. The defendants in *Patterson* and *Swanson* were detained based upon their "mere presence" in a stopped vehicle, and upon a generalized concern arising from illegal activity of the other occupants. *Id.* ¶¶ 28, 29. Significantly, the defendant in *Swanson* was interrogated about drugs and then charged with possession after a consensual search disclosed drugs on his person. *Id.* ¶¶ 8–12. In each case, the Court of Appeals held that, without any individualized suspicion, the defendant's mere status as a passenger was insufficient grounds to expand the investigation beyond the occupant whose conduct originally aroused the officer's suspicions. *Id.* ¶¶ 28, 29. In *Williamson,* on the other hand, the Court of Appeals upheld a consensual search of the driver's person after drugs were found on the passenger because the officer had initially suspected the driver of driving while impaired. 2000–NMCA–068, ¶ 14, 129 N.M. 387, 9 P.3d 70. The Court found that the officer's suspicions were sufficiently linked to the driver personally to expand the scope of the traffic stop to an investigation of the driver's person. *Id.*

{31} In our view, neither case is particularly helpful to our inquiry. As we have made clear, after finding drugs on the passenger, Officer Minter did not immediately turn his attention to Defendant and begin interrogating him as a suspect, as in *Patterson* or *Williamson,* about drugs on his per-

son. He never asked for consent to search Defendant personally, and did not do so until much later in the investigation after his arrest. If the officer had focused prematurely on Defendant as a suspect, then our inquiry today would be different. However, Officer Minter, suspecting that other evidence of the passenger's criminal act could be found in the car, asked Defendant a single question-whether there was anything *in the car* he needed to know about-before requesting Defendant's consent to search *the car*. These two simple inquiries were reasonably designed to confirm or dispel Officer Minter's suspicion about the criminal activity of the passenger, not the driver, and the presence of other contraband in the car. The officer reasonably directed his inquiry at the driver, the one person who presumably would know about the car's contents and who could provide consent for its search.

{32} In weighing the officer's intrusion on Defendant's privacy, we should ask ourselves what other actions a reasonable officer would be expected to take under similar circumstances, if not those taken in this instance. Upon developing reasonable suspicion that other drugs or drug paraphernalia might be in the car, based on the passenger's possession of similar contraband, Officer Minter had other options, but none that would have spared Defendant the risk of an even greater intrusion into his privacy. For example, the officer could have detained the car and conducted his own warrantless search on the basis of some theory of exigent circumstances, though no such theory was raised in this case. The officer could have detained the car, awaiting a warrant or a drug dog, and allowed Defendant to leave, no doubt at Defendant's considerable inconvenience. The officer could have erred on the side of caution, and simply let the car go, thereby ignoring his suspicions and turning a blind eye to criminal activity. Or, Officer Minter could take the simplest, most direct approach with minimal intrusion on Defendant's privacy, and ask a brief question about the contents of the car before requesting Defendant's consent to search the car. Officer Minter chose the last option, and we hold that his choice was constitutionally reasonable under the circumstances.

{33} We conclude that Officer Minter's minimal detention of Defendant, based on the presence of reasonable suspicion about the contents of the car, to ask a single question about other criminal activity in the car before asking for consent to search, was reasonable. Because the detention was reasonable, Officer Minter's request for consent was lawful.

## CONCLUSION

{34} We reverse the Court of Appeals and reinstate the judgment and sentence of the district court.

{35} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD E. RANSOM (Pro Tem), Justices.