This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

    Plaintiff-Appellant,

v.                                    **NO. 31,726**

**TINA FERRELL**,

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Edmund H. Kase, III, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**HANISEE, Judge.**

The State appeals the district court's order granting Defendant Tina Ferrell's motion to suppress. Viewing the facts in the light most favorable to the district court's ruling and applying the law to those facts, we find no error. Accordingly, we affirm.

In the district court, Defendant moved to suppress the evidence obtained during a traffic stop and pursuant to the warrant obtained as a result of the evidence discovered during the stop. She argued that the original purpose of the stop was to investigate her boyfriend Tyler Coslin's traffic violation of driving at night without headlights, and that the officers improperly expanded the scope of the stop to question her regarding drugs without reasonable suspicion. After a hearing and supplemental briefing, the district court granted the motion to suppress.

An order of evidence suppression based upon an alleged violation of the United States or New Mexico Constitutions entails a mixed question of fact and law. *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922. "We review factual determinations for substantial evidence and legal determinations de novo." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. Where, as here, the district court did not set out its findings of fact and conclusions of law, we will draw all reasonable inferences from the facts in favor of the district court's ruling.

*Funderburg*, 2008-NMSC-026, ¶ 10.

Because of the manners in which the case proceeded in the district court and is now argued by the parties on appeal, we need not address the constitutionality of the stop under the Fourth Amendment to the United States Constitution. *See Ketelson,* 2011-NMSC-023, ¶ 10 (explaining that under the interstitial approach to state constitutional interpretation, a court will first consider whether the right asserted is protected under the federal constitution; if it is, the state constitution is not reached; if it is not, a court will address a state constitutional claim). Article II, Section 10 of the New Mexico Constitution protects against unreasonable searches and seizures. *See* N.M. Const., art. II, § 10 (providing that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures"). This section has been construed to provide a level of protection that exceeds that of the Fourth Amendment in particular contexts. For example, our Supreme Court has held that under Article II, Section 10, when an officer conducts a traffic stop, "all questions asked during the stop [must] be reasonably related to the reason for the stop or otherwise supported by reasonable suspicion." *State v. Leyva*, 2011-NMSC-009, ¶ 55, 149 N.M. 435, 250 P.3d 861. If an officer wishes to ask any questions about other criminal activity that is unrelated to the original reason for the stop, he may only do so when the questions are supported by an independent reasonable suspicion of

unrelated illegal activity. *See id.* A reasonable suspicion "must consist of more than an officer's hunch that something is amiss; it requires objectively reasonable indications of criminal activity." *Id.* ¶ 23.

Applying these principles, New Mexico courts have held that reasonable suspicion exists to expand the scope of a traffic stop to permit the questioning of a defendant about other illegal activity only under circumstances that give rise to a specific and individualized reasonable suspicion that the defendant herself is engaged in such activity. When two or more people are in a car together, a court will not attribute the suspicious or confirmed criminal behavior of another occupant to the defendant in the absence of evidence of criminal activity on the part of the defendant. *See State v. Patterson*, 2006-NMCA-037, ¶¶ 27-29, 139 N.M. 322, 131 P.3d 1286 (holding, first, that the police could not detain and question a defendant based on evidence that another occupant of the car possessed drug paraphernalia and had an open container of alcohol, and, second, that the police could not detain and question a defendant based on the fact that another occupant of the car lied about the reason for avoiding a roadblock and rummaged around the floorboard, despite all three occupants, including the defendant, appearing to be nervous). The fact that others in the car have engaged in criminal activity and that the defendant appears nervous is insufficient. *Id.* ¶ 29. The police may expand the scope of a traffic stop to include

questioning of a defendant about drugs based on the drug activity of another person in the car only when there are other indicia of drug activity by the defendant, such as when the defendant herself seems impaired. *See State v. Williamson*, 2000-NMCA-068, ¶¶ 4, 10, 129 N.M. 387, 9 P.3d 70 (holding that after the police discovered drugs in the passenger's possession, they had a reasonable suspicion to question the defendant about whether he also possessed drugs, since he also seemed to be impaired). When someone in the car is found to possess drugs, the police also have a reasonable suspicion to ask the person who has control over the vehicle, such as the owner or driver, for permission to search the car for drugs, since possession by an occupant provides reasonable suspicion that there might be drugs or paraphernalia in the vehicle. *See Funderburg*, 2008-NMSC-026, ¶¶ 28-29. However, evidence of one occupant's drug activity does not give the police a reasonable suspicion to question another occupant regarding the existence of illegal drugs on her person or her own illegal drug activity. *Id.* ¶¶ 28-31; *see also Patterson*, 2006-NMCA-037, ¶¶ 27-29.

The expansion of the scope of a traffic stop to question a defendant regarding possible drug activity is also permitted when other evidence, under the totality of the circumstances, suggests possible illegal conduct. *See State v. Van Dang*, 2005-NMSC-033, ¶16, 138 N.M. 408, 120 P.3d 830 (holding that there was a reasonable suspicion to ask about drug activity when the car was a rental car, the driver's name

was not on the rental agreement, and the driver provided an unclear explanation regarding his permissive use of the vehicle; the occupants of the car provided inconsistent stories about their travel plans; and the defendant appeared nervous); *State v. Duran*, 2005-NMSC-034, ¶¶ 3-15, 138 N.M. 414, 120 P.3d 836 (holding that there was a reasonable suspicion to ask a defendant if there were drugs in the car when the car had a temporary license plate and the driver's paperwork showing ownership of the vehicle was incomplete, suspicious objects were visible in the car, the occupants of the car gave inconsistent accounts of their travel itinerary, the route they were taking was indirect and was a common drug-trafficking route, the driver seemed to be making things up as she described them, and her hands were shaking and she kept covering her face such that she seemed more nervous than most people during traffic stops), *overruled on other grounds by Leyva* 2011-NMSC-009, ¶ 17. In short, our precedent has consistently established the principle that Article II, section 10 of the New Mexico Constitution requires specific evidence that points to the defendant's own possible criminal activity—not mere proximity to another person's criminal activity—in order for investigative questioning to be justified.

During the hearing on Defendant's motion to suppress, the evidence that Officer Baker repeatedly pointed to as the basis of his suspicion that Defendant was engaged in drug activity included the following facts: (1) Coslin's eyes were dilated, indicating

6

that he might be under the influence of an illegal drug, (2) Coslin seemed extremely nervous since he was tapping his foot and refusing to make eye contact with Officer Baker, (3) Defendant answered questions that were addressed to Coslin, (4) the car Coslin was driving was Defendant's, (5) once separated, Coslin and Defendant gave different answers about the nature of their relationship, and (6) Defendant and Coslin both lived in town but were going to stay at a motel together.

Additional evidence presented by the State showed that Officer Baker relied on the fact that, after he asked Defendant whether she was in personal possession of drugs and whether he could search her pockets, her response seemed unusual to him. However, this evidence was obtained after a question about illegal drugs, and the issue before the district court was whether Officer Baker had reasonable suspicion to ask such a question in the first place. Thus, we do not consider Defendant's response as part of the totality of the circumstances that the officer could have relied on to support the expansion of the stop to inquire about drugs. Additionally, Officer Baker stated that he had received information from another officer several weeks earlier that a car that looked similar to Defendant's car "possibly" may contain narcotics. However, Officer Baker admitted that he did not know the identity of the informant who gave this information to the officer, and he therefore did not know whether the informant was reliable. The State does not argue in its brief that this information should be

considered by this Court as a basis for reasonable suspicion. Accordingly, we do not consider this fact when assessing the reasonableness of Officer Baker's suspicion.

Viewing the evidence in the light most favorable to the district court's ruling, we hold that the district court did not err in concluding that the facts known to Officer Baker were not the kind of particularized and objective indicia of Defendant's own criminal activity that would support a reasonable suspicion to expand the scope of the traffic stop to question Defendant about whether she had illegal drugs on her person. First, while the appearance of Coslin's eyes and his nervousness might have supported a reasonable suspicion to investigate whether Coslin had drugs or whether there might be drugs in Defendant's car, courts cannot attribute one occupant's criminal activity to another, and these facts did not provide a reasonable suspicion that Defendant had drugs on her person. *See Funderburg*, 2008-NMSC-026, ¶¶ 29-31 (holding that when there was evidence that a passenger in a car possessed illegal drugs on his person, there was reasonable suspicion to support an inquiry about whether there were drugs in the car, but stating that such evidence would not have provided a reasonable suspicion to ask the driver whether there were drugs on his person).

Although Officer Baker stated that Coslin and Defendant gave conflicting stories about the nature of their relationship, we note that people involved in romantic relationships often do not share the exact same level of commitment to the relationship

8

or view it in exactly the same way, such that the district court could properly have found that such an inconsistency—unlike an inconsistency about a travel itinerary—was not suspicious. Furthermore, during the suppression hearing the State played the video recording of Officer Baker's encounter with Coslin and Defendant, which provided evidence that could be viewed as contrary to Officer Baker's characterization of their statements as inconsistent. When Officer Baker asked Coslin how he knew Defendant, Coslin said that she was his girlfriend. A few seconds later, Officer Baker asked how they met, and Coslin said that they met through Defendant's cousin. When Officer Baker asked Defendant how she knew Coslin, she stated that she knew him through her cousin. When he asked whether she and Coslin were "an item" like "boyfriend and girlfriend," Defendant said "yes". Officer Baker clearly understood Defendant's answer to be yes, since he then asked whether she thought that she was "robbing the cradle." Viewing this evidence in the light most favorable to the district court's ruling, Coslin's and Defendant's statements were not inconsistent and the district court could have found that Officer Baker's characterization was inaccurate.

As for the remaining evidence: that Defendant answered questions that were addressed to Coslin, that the car Coslin was driving was Defendant's, and that Defendant and Coslin both lived in town but were going to stay at a motel together,

9

the district court could have reasonably inferred that these facts simply demonstrated an intimate relationship, and not suspicious activity on the part of Defendant. Accordingly, the district court did not err in concluding that Officer Baker lacked reasonable suspicion to expand the scope of the traffic stop to question Defendant about illegal drugs.

For these reasons, we affirm the order of the district court.

**IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**