This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v. NO. 35,826

**DAVID GOMEZ-AGUILERA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson
Albuquerque, NM

for Appellant

Fredlund & Bryan Attorneys at Law
Jon Charles Fredlund
Hobbs, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1} Plaintiff State of New Mexico appeals from the district court's order suppressing evidence, entered on August 9, 2016. In this Court's notice of proposed disposition, we proposed to summarily affirm. The State filed a memorandum in opposition to proposed summary disposition (MIO), which we have duly considered. Remaining unpersuaded, we affirm the district court's suppression of the evidence.

{2} In its memorandum in opposition, the State continues to argue that the expansion of the traffic stop did not violate the Fourth Amendment to the United States Constitution [MIO 4-6] or Article II, § 10 of the New Mexico Constitution [MIO 6-9]. The thrust of the State's arguments has largely been addressed by our notice of proposed disposition, so we refer the State to our analysis therein. [*See* CN 6-9] With regard to the State's contention that Defendant may not have sufficiently preserved his argument pursuant to the New Mexico Constitution [MIO 7], the district court clearly addressed both constitutions [*see* CN 5-6] and, as acknowledged by the State, Defendant's reference to the New Mexico Constitution before the district court was sufficient [*see* MIO 7]. *See State v. Leyva*, 2011-NMSC-009, ¶¶ 49-50, 149 N.M. 435, 250 P.3d 861 (reiterating that preservation requires that a ruling or decision by the district court be fairly invoked and concluding that the defendant met the requirement by pleading his right to be free from unreasonable search and seizure under both constitutions).

{3}     We additionally note that none of the facts asserted by the State in its memorandum in opposition changes our analysis. [MIO 1-4] Indeed, the facts are generally as asserted in our calendar notice [*see* CN 3-6], and the few additional details—such as that the officers not only told Defendant that someone could get in trouble if there were drugs in Defendant's truck, but also told him that Officer Ray was a K9 officer and that the dog would alert them to drugs; that they also had the dog sniff the truck; and that Defendant only admitted to having drugs in his truck after the dog's behavior changed and the dog alerted the officers to the presence of the drug [MIO 3]—do not change the fact that, *prior* to expanding the search, the officers had no reasonable suspicion to do so because their expansion was based solely on one officer's observation of Defendant's elongated pinky nail, longer than any of his other fingernails, which he advised is "a common indicator of narcotic use." [MIO 2] In fact, the officers' threatening Defendant with the K9 drug dog, having the dog sniff the truck with no reasonable suspicion, and Defendant admitting the presence of drugs only after the illegal search began, is more a cause for concern, than a factor that would weigh in the State's favor. *See, e.g.*, *State v. Monteleone*, 2005-NMCA-129, ¶ 17, 138 N.M. 544, 123 P.3d 777 ("To determine whether the evidence discovered by the officer's search should have been suppressed under the 'fruit of the poisonous tree' doctrine, we determine whether the officers obtained [the d]efendant's consent

3

by means sufficiently distinguishable to be purged of the primary taint." (internal quotation marks and citations omitted)).

{4}    Moreover, even if there were no violation pursuant to the Fourth Amendment of the United States Constitution based on the brief time that elapsed between when Officer Ray informed Officer Glashaukas about the long pinky nail and when Defendant admitted to having drugs in his truck, as argued by the State [MIO 3-6], the New Mexico Supreme Court rejected "[t]he creation by the United States Supreme Court of a bright-line rule for permissible questioning during traffic stops under the Fourth Amendment [a]s incompatible with the approach . . . adopted in *Duran*." *Leyva*, 2011-NMSC-009, ¶ 17; *see id.* (indicating that "[t]he proper Fourth Amendment inquiry, as stated by the Tenth Circuit, is whether an officer's traffic stop questions extended the time that a driver was detained, regardless of the questions' content" (internal quotation marks and citation omitted)); *see also State v. Duran*, 2005-NMSC-034, ¶¶ 33-35, 138 N.M. 414, 120 P.3d 836 (discussing permissible questioning by police officers during a traffic stop); *overruled by Leyva*, 2011-NMSC-009, ¶ 17. Thus, our Supreme Court has directed that we follow *Duran* even pursuant to a Fourth Amendment analysis. We discuss the standard in *Duran* further below.

{5}    Additionally, contrary to the State's assertions [MIO 6-9], there is certainly a violation under the New Mexico Constitution, precluding the need to further evaluate

4

the Fourth Amendment. *See State v. Olson*, 2012-NMSC-035, ¶ 10, 285 P.3d 1066 (concluding that, "even though [the d]efendant ha[d] preserved both claims, we need only to address the broader protections under Article II, Section 10 of the New Mexico Constitution"). Indeed, New Mexico case law establishes that it is well settled that "[r]easonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. "[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (alteration, internal quotation marks, and citation omitted). The proper inquiry, under the New Mexico Constitution, was articulated in *Duran*, 2005-NMSC-034, ¶ 35:

> [A]ll questions asked by police officers during a traffic stop must be analyzed to ensure they are *reasonably related to the initial justification for the stop or are supported by reasonable suspicion. . . .* [T]his determination must also include an examination of both the length of the detention and the manner in which it is carried out.

*Id.* (emphasis added) (internal quotation marks and citation omitted). "An officer may expand the scope of the search or seizure during the investigatory stop *only where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot*." *Duran*, 2005-NMSC-034, ¶ 23 (emphasis added) (internal quotation marks and citation omitted), *see Leyva*, 2011-NMSC-009, ¶ 17 (explaining that the

5

Fourth Amendment no longer provides the same protections against expanding the scope of the stop as New Mexico). In the present case, after Defendant satisfactorily completed the field sobriety tests and was told to leave, there was no reasonable suspicion that criminal activity had been or may have been afoot.

{6} To the extent the State argues that Defendant's elongated fingernail is somehow "conduct that is consistent with innocent behavior [that nevertheless] establish[es] reasonable suspicion," [MIO 7-8], we disagree. First, the State has pointed to no law that equates the presence of a single feature in a defendant's physical appearance with *conduct* that gives way to reasonable suspicion that criminal activity has occurred or is occurring, so we assume none exists. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 (stating that "[w]e will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists"). Second, we decline to hold that a single physical feature of a defendant, even if it is one that is often associated with certain criminal activity, gives rise to reasonable suspicion that such criminal activity is afoot, without anything further. As our case law has made clear, reasonable suspicion must be based on specific, articulable facts and may not be based on a mere hunch. *See Flores*, 1996-NMCA-059, ¶ 7; *Funderburg*, 2008-NMSC-026, ¶ 15. The presence of an elongated pinky nail, even combined with the absence of long fingernails on a defendant's other fingers, does not rise to that level.

{7}     Accordingly, for the reasons stated in our notice of proposed disposition and herein, we affirm the district court's order suppressing the evidence.

{8}     **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**