2007-NMCA-021

151 P.3d 911

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**William FUNDERBURG, Defendant–
Appellant.**

**No. 25,591.**

Court of Appeals of New Mexico.

Dec. 11, 2006.

Certiorari Granted, No. 30,180,
Jan. 30, 2007.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} In this case, we must determine whether a police officer had a reasonable suspicion to conduct a lawful stop of Defendant's vehicle, and whether the officer had sufficient, individualized suspicion that Defendant was violating a law, giving him reason to expand his investigatory scope beyond

the initial inquiry. We hold that the stop of Defendant's vehicle was lawful, but there was not sufficient, individualized suspicion to expand the scope of the initial inquiry upon Defendant and his vehicle. There were no separate, articulable facts that justified extending the stop of Defendant and his vehicle once the forgery suspect was detained.

## I. BACKGROUND

{2} On January 19, 2004, Ruidoso Downs Police Officer James Minter responded to a call from the Billy the Kid Casino (casino). "Larry Sinclair" (a/k/a Sinclaire) endorsed and cashed a check payable to "Larry Sinclaire" at the casino, on a date previous to January 19, 2004, which had been returned unpaid and marked "account closed." The officer took possession of the check and left the casino. Several hours later, on that same day while on patrol, the officer received a call from dispatch over his police radio. A Fast Funds employee at the casino had called to notify the police that Sinclair had returned to the casino and was now leaving the casino in a "dark[-]colored sedan." Since he was in the vicinity, the officer immediately drove to the casino and, upon his arrival, saw a dark-colored sedan exiting the casino. The sedan was the only vehicle leaving the casino at that time. The officer then turned his car around and initiated a traffic stop under the suspicion that Sinclair may be in the dark-colored vehicle. Inside the vehicle were two males and a female. The officer made contact with the driver, William Funderburg (Defendant), asking for his driver's license, registration, and proof of insurance. Defendant's papers were in order.

{3} The officer then asked the male passenger, Sinclair, for his identification and found he was the suspect in the check forgery. The officer asked Sinclair to get out of the car for questioning. During questioning, Sinclair appeared nervous and repeatedly placed his hands in his right front pocket. The officer asked him if there was anything that he needed to know about and Sinclair advised him that he had a marijuana pipe. After retrieving the pipe, the officer observed a small amount of a green, leafy substance in the pipe, which the officer rec-

ognized as marijuana, and Sinclair was arrested. The officer then went to Defendant and asked if there was anything in the car that the officer needed to know about. When Defendant said there was not, the officer asked for his consent to conduct a search of the vehicle. Defendant stated that "he did not care" if the officer searched the car. The officer asked Defendant and the female passenger to step out of the car. During the search of Defendant, the officer found a pipe with a white, powdery residue that, based on his training and experience, he suspected was a methamphetamine pipe and methamphetamine residue. Defendant admitted that it was his pipe and he was arrested. The white substance found during the officer's search tested positive for methamphetamine.

{4} Defendant was charged with one count of possession of methamphetamine, NMSA 1978, § 30–31–23(D) (2005), a fourth-degree felony, and one count of use or possession of drug paraphernalia, NMSA 1978, § 30–31–25.1 (2001), a misdemeanor. Defendant filed a motion to suppress the evidence, claiming the officer lacked reasonable suspicion for the stop and impermissibly expanded the scope of any lawful detention when asking for consent to search Defendant's vehicle. The district court denied the motion to suppress the evidence after an evidentiary hearing. Thereafter, Defendant entered a plea of no contest on the paraphernalia charge and the State dismissed the methamphetamine charge. At sentencing, Defendant was given a deferred sentence and placed on supervised probation for a period of three hundred and sixty-four days. He reserved the right to appeal the district court's denial of the suppression.

## II. DISCUSSION

### A. Standard of Review

{5} "We review the denial of a motion to suppress as involving a mixed question of law and fact, reviewing the facts under the substantial evidence standard and then conducting a de novo review of the district court's application of law to those facts." *State v. Affsprung*, 2004–NMCA–038, ¶ 6, 135 N.M. 306, 87 P.3d 1088.

## B. There was Reasonable Suspicion for the Traffic Stop

{6} Defendant contends, pursuant to *Franklin* and *Boyer*, that the officer did not have reasonable suspicion to stop and detain his vehicle. *See State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) (applying requirement to advance points by the defendant despite attorney's lack of confidence in their merit); *see also State v. Boyer*, 103 N.M. 655, 658–59, 712 P.2d 1, 4–5 (same). Specifically, the description of the vehicle as a "dark[-]colored sedan" was not sufficiently specific to create a reasonable suspicion to support a stop of his vehicle.

{7} "A brief detention for investigatory purposes is a seizure entitled to Fourth Amendment protections." *State v. Contreras*, 2003–NMCA–129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. All seizures under the Fourth Amendment must be reasonable. *See id.* "A police officer may, in appropriate circumstances approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *State ex rel. Taxation & Revenue Dep't v. Van Ruiten*, 107 N.M. 536, 538, 760 P.2d 1302, 1304 (Ct. App.1988). "The officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity." *Contreras*, 2003–NMCA–129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. Reasonable suspicion is dependent on both the content of information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

{8} In the present case, this stop was based on the fact that the officer was investigating a felony forgery case and had been told by his police dispatcher that the suspected forger was leaving the casino at that moment in a "dark[-]colored sedan." The call to the police came from casino personnel, specifically a Fast Funds employee, who spotted Sinclair, the person whom they alleged had forged the check. The officer immediately drove to the casino. When the officer arrived, only one dark-colored sedan was exiting the property. Under the totality of the circumstances, we regard this as sufficiently reliable because timing, the description of the vehicle, and the fact that the suspect, Sinclair, was said to be in it, all combined to make the stop a reasonable one. The vehicle was the only "dark[-]colored sedan" exiting the casino as the dispatcher had reported.

{9} Accordingly, we determine that, under the totality of circumstances, the officer's stop of Defendant's vehicle was reasonable. The facts of the case allow the inference that the dispatcher provided reliable information to the officer on behalf of an eyewitness, the Fast Funds employee. The information given was detailed enough for the officer to find the vehicle in question and confirm the location and description. We hold on the facts of this case, and considering the totality of the circumstances, that the officer had a reasonable suspicion sufficient to make a brief, investigatory stop of Defendant's vehicle.

## C. There was no Individualized Suspicion Allowing the Officer to Expand the Scope of the Initial Inquiry

{10} Defendant contends that the officer did not have sufficient, reasonable suspicion to expand the scope of his inquiry beyond the initial stop of the vehicle. Defendant submits that the officer's detention and further investigation of Defendant, once Sinclair was identified as the lawbreaker, was not justified. We agree.

{11} We rely on *State v. Patterson*, consolidated with *State v. Swanson*. 2006–NMCA–037, 139 N.M. 322, 131 P.3d 1286. In both cases, police officers approached occupants of vehicles stopped in business parking lots during the late evening hours. *Id.* ¶ 1. Police found drug paraphernalia in a pat-down search of an occupant in both instances. *Id.* In *Patterson*, the officer also observed an open container of beer on the rear floorboard near where the occupant had been sitting. *Id.* ¶ 3. In both *Patterson* and *Swanson*, the

officers asked both the defendant passengers for their identification, after learning that other occupants in the vehicles possessed drug paraphernalia. *Id.* ¶¶ 4, 10. The district courts in both cases denied the defendants' motions to suppress evidence obtained during the encounters. *Id.* ¶ 1.

{12} In *Patterson*, the officer testified that he did not observe the defendant passenger with an open container of alcohol, or observe any open container in the area near him. *Id.* ¶ 28. Thus, the officer did not have an individualized suspicion that the defendant, as a passenger, was violating the open container law. *Id.* Likewise, in *Swanson*, the officer articulated no facts beyond the defendant passenger's mere presence that could justify individualized suspicion of possession of contraband by the defendant. *Id.* ¶ 29. The officer did not have reasonable suspicion that the defendant was engaged in criminal activity sufficient to detain the defendant for investigation. *Id.* The officer only stated that the defendant and the other occupants of the vehicle exhibited nervous behavior and did not articulate any specific concern with regard to the defendant. *Id.* Thus, this Court reasoned that no individualized suspicion justified the detention of Patterson or Swanson and, under the Fourth Amendment, their motions to suppress were improperly denied. *Id.* ¶ 1.

{13} In the present case, as stated earlier, Defendant's encounter with the officer resulted from an investigatory detention that was based on "a reasonable suspicion that the law ha[d] been ... violated." *State v. Taylor*, 1999–NMCA–022, ¶ 7, 126 N.M. 569, 973 P.2d 246 (internal quotation marks and citation omitted). Defendant was not himself a suspect. The fundamental question here is whether the officer had individualized suspicion that Defendant was violating a law, giving him reason to expand his investigatory scope beyond the initial inquiry, i.e., the stop of Defendant's vehicle occasioned by the tip regarding Sinclair. "This Court has consistently held that a finding of individualized suspicion requires the articulation of the suspicion in a manner that is particularized with regard to the individual who is stopped."

*Patterson*, 2006–NMCA–037, ¶ 24, 139 N.M. 322, 131 P.3d 1286.

{14} The police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if they lack probable cause under the Fourth Amendment. *See State v. Jones*, 114 N.M. 147, 149–50, 835 P.2d 863, 865–66 (Ct.App.1992). Reasonable suspicion entails some minimal level of objective justification for making a stop; that is, something more than an inchoate and unparticularized suspicion, but less than the level of suspicion required for probable cause. *Id.*

{15} The continued detention of a driver, or detention of a passenger, for other investigative purposes, including investigatory questioning, requires reasonable suspicion proven through specific articulable facts that the driver or passenger has been, or is, engaged in a criminal activity other than the initial traffic violation. *See Affsprung*, 2004–NMCA–038, ¶ 11, 135 N.M. 306, 87 P.3d 1088. A driver or passenger may also be detained under certain circumstances out of an officer's concern for his safety, specifically whether the detainee is carrying a weapon. *Id.* However, in *Patterson*, this Court referenced *Affsprung*, stating that "the defendant's mere presence as a passenger in a vehicle stopped for a traffic violation does not provide individualized suspicion for the officer to ask for the passenger's identification." *Patterson*, 2006–NMCA–037, ¶ 24, 139 N.M. 322, 131 P.3d 1286.

{16} The State nonetheless relies on *State v. Williamson*, 2000–NMCA–068, 129 N.M. 387, 9 P.3d 70, which holds that a law enforcement officer investigating a traffic violation must have a reasonable and articulable suspicion that the driver is impaired in order for the officer to detain the driver to investigate the separate matter of impairment from alcohol. *Id.* ¶ 8. The officer's investigation is limited to a reasonable inquiry that is designed to satisfy the officer's reasonable suspicions. The State's reliance on *Williamson* is misplaced. In *Williamson*, the driver was intoxicated and showed signs of impairment. *Id.* ¶ 5. The passenger had an outstanding municipal court warrant for her arrest. The

officer placed the passenger under arrest and searched her fanny pack, finding an illegal substance in the passenger's possession.

{17} This Court, in *Williamson,* held that the law enforcement officer did not exceed the scope of permissible investigation during the traffic stop because after conducting field sobriety tests and deciding that the results did not justify arrest, he asked the defendant driver about drugs and asked whether the defendant would consent to a search of his vehicle. 2000–NMCA–068, ¶ 4, 129 N.M. 387, 9 P.3d 70. The presence of drugs in the defendant's vehicle, even though in the passenger's possession, combined with the defendant's impaired appearance, and the defendant performing questionably on field sobriety tests, was sufficient to reasonably arouse the officer's suspicion that the defendant also had drugs in his possession. *Id.* ¶ 10.

{18} In the case at bar, the discovery of a forgery suspect in Defendant's vehicle did not justify expansion of the initial inquiry to include questioning Defendant. There was nothing to support the detention of Defendant, or the request to search his vehicle, other than Sinclair's possession of marijuana. There was nothing to cause suspicion that Defendant had committed any wrongdoing. The officer conceded this point during his testimony. After he discovered a marijuana pipe on Sinclair, he switched his attention to Defendant, solely because Sinclair was found in possession, not because the officer had individualized suspicion of Defendant. The officer stated: "Seeing as how that person [the passenger, Sinclair,] had drugs and drug paraphernalia on him, I went to [Defendant] to ask if there was anything in the vehicle I needed to know about." At the time the officer switched his attention to Defendant, Sinclair was, the only occupant suspected of a crime and was the only nervous occupant. Defendant had already provided his identification, registration, and insurance information to the officer upon the initial stop. Defendant had not committed any violation. Defendant's information was current and valid. The officer had specific information of criminal activity by Sinclair, but not by Defendant. Therefore, as in *Pat-*

*terson,* the officer did not have any further reason or individualized suspicion to detain or search Defendant. In contrast, in *Williamson,* the officer "had a separate and particular suspicion about [d]efendant." 2000–NMCA–068, ¶ 14, 129 N.M. 387, 9 P.3d 70.

{19} In *State v. Van Dang,* 2005–NMSC–033, 138 N.M. 408, 120 P.3d 830, the facts are distinguishable from the case at hand. In *Van Dang,* our Supreme Court held that the defendant had no standing to challenge the constitutionality of the search of the vehicle because it was a rental car and he was not on the contract as the renter or authorized driver. *Id.* ¶ 5. However, while the defendant did have standing to challenge the constitutionality of his own detention, the twenty-five minute detention was lawful because the officer had the right to detain the defendant, pending his reasonable investigation of the circumstances surrounding what appeared to be an unauthorized use of a rental vehicle. *Id.* ¶ 1. The officer's questioning about drugs was based on specific, articulable facts, giving rise to a reasonable suspicion that the defendant may have been transporting drugs. *Id.* Consequently, the duration and scope of the defendant's detention was reasonable under the circumstances. *Id.*

{20} In *Van Dang,* the officer was able to articulate specific facts based upon his experience as a law enforcement officer, addressing why the defendant's apparent unauthorized use of a rental car led to a reasonable suspicion of drug trafficking. *Id.* ¶ 16. Specifically, in addition to the defendant's nervousness, the defendant was from out-of-state, he and his passenger had inconsistent stories about travel plans, and the defendant had an inconsistent story about his authority to use the rental vehicle. *Id.* "Although the rental contract is not part of the record, it is undisputed that the rental contract did not list Defendant as the renter or as an authorized driver." *Id.* ¶ 1. In *Van Dang,* the police officer had eleven years of experience and, during eight of those years, the officer participated in the drug interdiction program, which involved exercises on the freeways in various counties. *Id.* ¶ 16. He was also in the drug task force for that particular

region for three years. *Id.* The officer explained his prior experience at trial:

> He estimated making an average of five drug trafficking arrests per year during that time, with up to eighty-five percent of those arrests involving rental cars. He testified that, in his experience, it was common to find rental cars being used to transport drugs, frequently where the actual renter of the vehicle was not present.

*Id.* The Supreme Court said that because of the "totality of the circumstances and the officer's training and experience, [it] conclude[d] that the officer's suspicion about drugs was based on specific, articulable facts and the reasonable inferences that could be drawn from those facts." *Id.*

{21} In the present case, Defendant was only stopped because he had a possible forgery suspect riding in his automobile. He had not committed any driving infractions and was not a suspect in the forgery. Defendant provided current and correct paperwork (i.e., license, registration, and insurance) upon the officer's request. The officer acknowledged, during his testimony, that the only reason that he believed that there were drugs and/or paraphernalia inside Defendant's car was because he found them on Sinclair. The officer in *Van Dang* clearly had substantially more facts to support expanding the scope of the initial stop than the officer had to justify shifting his attention from Sinclair to Defendant. Other than the fact that Defendant was transporting Sinclair, there was nothing indicating Defendant was involved in any illegal activity. For these reasons, *Van Dang* is distinguishable.

## III. CONCLUSION

{22} We conclude that, under the totality of the circumstances, the officer had reasonable suspicion to conduct a lawful stop of the vehicle due to the suspected criminal activity of Sinclair. However, since the officer did not have sufficient, individualized suspicion to conduct a search of Defendant, he could not expand the scope of the inquiry. Here, any reason to detain Defendant terminated at the latest once the officer checked Defendant's paperwork and identified Sinclair as the sus-

pect. We reverse the district court's decision denying Defendant's motion to suppress.

{23} **IT IS SO ORDERED.**

I CONCUR: RODERICK T. KENNEDY, Judge.

JONATHAN B. SUTIN, Judge
(concurring in part and dissenting in part).

SUTIN, Judge (concurring in part and dissenting in part).

{24} I agree that the officer had reasonable suspicion to stop and detain the vehicle Defendant was driving. I respectfully disagree with the majority that the officer unlawfully expanded his inquiry.

{25} After stopping Defendant's vehicle because of information that a forgery suspect was in the vehicle, the officer's first inquiry was directed to Defendant, who was driving the vehicle. The inquiry related to Defendant's license, registration, and insurance. The officer's next inquiry was directed to Sinclair, who was a passenger. That inquiry related to Sinclair's identification as the forgery suspect. The officer next asked Sinclair to exit the vehicle for further questioning. Outside the vehicle, after he developed concerns about Sinclair repeatedly putting his hand in his right front pocket, the officer asked whether Sinclair had anything in there he needed to know about. Sinclair told the officer that he had a marijuana pipe, and upon retrieval of the pipe, the officer observed marijuana in it, and Sinclair was arrested.

{26} After arresting Sinclair, the officer again turned his attention to Defendant. The officer inquired of Defendant as to whether there was anything in the vehicle that the officer needed to know about. It is this inquiry that is under the constitutional microscope in this case, giving rise to the issue whether the detention that occurred by the inquiry was unreasonable under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant contends that the officer did not have reasonable suspicion "to expand the scope of his inquiry beyond his detention of [Sinclair]" by "in-

clud[ing] questioning the driver about drug possession."

{27} It is reasonable to infer that the officer expanded his investigation from Sinclair's possession of drugs and drug paraphernalia to other possible drugs within the vehicle of which Defendant may have had knowledge. The officer testified: "Seeing as how [Sinclair] had drugs and drug paraphernalia on him, I went to the driver and asked if there was anything in the vehicle I needed to know about." This expanded investigation could reasonably have stemmed from two suspicions, both of which were reasonable: (1) other drugs or drug paraphernalia may be present in the vehicle, including on Defendant himself; and (2) if there were other drugs or drug paraphernalia in the vehicle, Defendant as driver or owner might be in unlawful possession of contraband.

{28} The question is: Did the totality of the circumstances following the initial lawful stop, the lawful inquiry and behavior of Sinclair, and Sinclair's ensuing arrest, provide a reasonable suspicion to inquire of Defendant whether there was anything in the vehicle about which the officer should know? *See State v. Urioste*, 2002–NMSC–023, ¶ 10, 132 N.M. 592, 52 P.3d 964 ("In determining whether reasonable suspicion exists in a particular case, 'the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.' " (citation omitted)); *State v. Williamson*, 2000–NMCA–068, ¶ 6, 129 N.M. 387, 9 P.3d 70 ("[W]e examine, as a matter of law, the totality of the circumstances to determine whether the officers illegally detained [the d]efendant and whether [the officer] impermissibly expanded his scope of inquiry."). I see no constitutional impediment to the inquiry.

{29} We are bound to weigh protection of an individual's privacy against the interests of the State, and to consider the level of intrusiveness of an officer's inquiry. *See Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Williamson*, 2000–NMCA–068, ¶ 6, 129 N.M. 387, 9 P.3d 70. Further, "we view

the facts in the manner most favorable to the State, indulging in all reasonable inferences supporting the order and disregarding inferences or evidence to the contrary." *Williamson*, 2000–NMCA–068, ¶ 6, 129 N.M. 387, 9 P.3d 70.

{30} Criminal activity was afoot in Defendant's vehicle based on Sinclair's possession of drugs and drug paraphernalia while he was in the vehicle. *See id.* ¶ 8 ("The officer may expand this investigation if the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." (internal quotation marks and citation omitted)). The one-question inquiry was minimally intrusive. Investigation of the suspicion proceeded diligently. *See id.* (stating that "the officer's investigation of any reasonable suspicion must proceed diligently"). While the inquiry in question may not have been justified based directly on the reason Defendant's vehicle was stopped, the inquiry was reasonable based on the suspected felon's possession of drugs in the vehicle. *See id.* ¶¶ 10–11 (holding that the passenger's possession of drugs "was sufficient to reasonably arouse [the officer's] suspicion that [the driver] also had drugs"). Looking at the totality of the circumstances to justify the minimal detention for further investigative inquiry, the circumstances are not comparable to the hypothetical advanced by Defendant of a soccer mom chauffeur surprised by a child passenger's possession of a hidden marijuana pipe. Affirming the district court in this case will not open the door to unlimited questioning of a driver based on a passenger's criminal activity. The discovery of drugs on Defendant was not tainted by the officer's inquiry.

{31} I see *Williamson* as closer than the two cases in *State v. Patterson*, 2006–NMCA–037, 139 N.M. 322, 131 P.3d 1286. Different than in *Patterson*, in *Williamson* the defendant was the driver. While a driver is not automatically charged with knowledge of a passenger's criminal activity, the circumstances in the present case were sufficient to permit investigation of the officer's articulated suspicion. *Cf. State v. Van Dang*, 2005–NMSC–033, ¶¶ 5, 13–16, 138 N.M. 408, 120

P.3d 830 (holding twenty-five minute detention of driver to investigate a suspected unauthorized use of a rental vehicle, during which the officer developed a reasonable suspicion of drug activity based on the totality of the circumstances and the officer's training and experience, to be lawful).

{32} I would affirm the district court's denial of Defendant's motion to suppress.