This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellant,

v.                                              **No. 31,251**

**JOSEPH CARRILLO,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed S. Sheppard, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellant

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     The State appeals from the district court order granting Defendant's motion to suppress.  We agree with the district court that the facts failed to establish reasonable suspicion to justify Defendant's investigatory detention.  We therefore affirm.

**BACKGROUND**

{2}     Following an evidentiary hearing, the district court made findings of fact in its order granting Defendant's motion to suppress.  On appeal, the parties do not dispute these findings by the district court or their support in the record, thus we accept them as conclusive.  *See State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337 ("When there are no challenges to the district court's factual findings, we accept those findings as conclusive." (internal quotation marks and citation omitted)).  Those findings are as follows.

{3}     Shortly before noon on October 6, 2009, Detectives Linson and Landavazo of the Albuquerque Police Department (APD) were working undercover in separate unmarked vehicles at the 4-H Park in Albuquerque.  APD had previously received complaints from residents in the area about possible narcotics activity in the park. Detective Linson observed a male occupant of a parked pickup truck (the driver) make a couple of quick phone calls.  After about five minutes, a man, later identified as Defendant, pulled up and parked behind the truck.  The driver then exited his truck

and "walked with some motivation" to Defendant's vehicle, at which time Detective Linson observed what appeared to be a hand-to-hand transaction that lasted three to four seconds. However, Detective Linson did not see what was exchanged. Detective Linson reported his observations to Detective Landavazo, whose view of this interaction between Defendant and the driver was blocked.

{4} Based on what Detective Linson had observed, the detectives believed Defendant was a drug dealer, and when he drove away from the park, they followed him. Defendant pulled into a Walgreens parking lot and parked, and the detectives stopped their vehicles beside him. As the detectives approached, Defendant started to exit his vehicle, and the detectives unholstered their weapons and held them at the low ready. Detective Linson ordered Defendant out of his vehicle and advised Defendant that he was going to do a pat-down. Defendant threw down a cigarette pack, saying, "It's just personal use." Defendant was handcuffed and Detective Linson searched the cigarette pack and found three small round packages that tested presumptively positive for heroin.

{5} Prior to trial, Defendant moved to suppress the heroin as the fruit of an unreasonable seizure, arguing that he was seized in the Walgreens parking lot and that Detective Linson's observations in the 4-H Park did not provide reasonable suspicion

3

to justify his seizure. *See generally State v. Ingram*, 1998-NMCA-177, ¶ 9, 126 N.M. 426, 970 P.2d 1151 ("Evidence which is obtained as a result of an unconstitutional search or seizure may be suppressed under the exclusionary rule." (internal quotation marks and citation omitted)). The district court granted Defendant's motion to suppress, expressly relying on *State v. Neal*, 2007-NMSC-043, 142 N.M. 176, 164 P.3d 57.

**ANALYSIS**

{6}    Reviewing a motion to suppress is typically a two-step process: we first look for substantial evidence to support the district court's factual findings, with deference to the district court's review of the testimony and other evidence presented, and then we review de novo the district court's application of law to the facts to determine whether the search or seizure was reasonable. *Neal*, 2007-NMSC-043, ¶ 15. The burden to show reasonableness is on the State. *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Robbs*, 2006-NMCA-061, ¶ 9, 139 N.M. 569, 136 P.3d 570; *see also State v. Vandenberg*, 2003-NMSC-030, ¶ 19, 134 N.M. 566, 81 P.3d 19 (providing that it is "the duty of appellate courts to shape the parameters of

4

police conduct by placing the constitutional requirement of reasonableness in factual context" (internal quotation marks and citation omitted)).

**{7}** "Both the Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution protect the right of the people to be free from unreasonable searches and seizures." *State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. The parties' arguments, the district court ruling, and the *Neal* decision upon which it was premised address only the scope of Fourth Amendment protections. For this reason, we limit our analysis to the Fourth Amendment and do not address whether the New Mexico Constitution provides greater protections for issues involving reasonable suspicion. *See generally State v. Lorenzo P.*, 2011-NMCA-013, ¶ 9, 149 N.M. 373, 249 P.3d 85 (limiting our analysis to federal constitutional protection when the appellee presented no argument on appeal as to why Article II, Section 18 of the New Mexico Constitution may provide him greater due process protection).

**{8}** Fourth Amendment protections extend to investigatory detentions that fall short of arrests. *Neal*, 2007-NMSC-043, ¶ 18; *see also State v. Javier M.*, 2001-NMSC-030, ¶ 19, 131 N.M. 1, 33 P.3d 1 (recognizing that investigatory detentions are Fourth Amendment seizures of limited scope and duration). The central inquiry under the

5

Fourth Amendment is reasonableness, which involves two questions: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Neal*, 2007-NMSC-043, ¶ 18 (internal quotation marks and citation omitted). The parties do not dispute the district court ruling that Defendant was seized in the parking lot; their arguments address only whether the seizure was justified at its inception.

{9} Under the Fourth Amendment, "police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that particular person is engaged in criminal activity." *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (internal quotation marks and citation omitted). While reasonable suspicion requires a showing of less than a preponderance of the evidence, *see State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964, the Fourth Amendment requires at least a minimal level of objective justification. *See State v. Funderburg*, 2007-NMCA-021, ¶ 14, 141 N.M. 139, 151 P.3d 911 ("Reasonable suspicion entails some minimal level of objective justification . . . that is, something more than an inchoate and unparticularized suspicion, but less than the level of suspicion required for probable cause."), *rev'd on other grounds*, 2008-NMSC-026, 144 N.M. 37, 183 P.3d

922. To this end, police officers must be "aware of specific articulable facts" that, judged objectively, "would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Pallor*, 1996-NMCA-083, ¶ 12, 122 N.M. 232, 923 P.2d 599 (internal quotation marks and citation omitted). When considering the facts and information known to the officer, the court may view all the circumstances keeping in mind the officer's special training and experience. *State v. Gonzales*, 2011-NMSC-012, ¶ 15, 150 N.M. 74, 257 P.3d 894.

{10} As noted above, the district court expressly relied on *Neal* to conclude that Detective Linson's observations in the 4-H Park did not provide reasonable suspicion for Defendant's subsequent seizure in the Walgreens parking lot. The core issue confronted by our Supreme Court in *Neal* was whether the officer had "individual, particularized reasonable suspicion with respect to [the d]efendant" that "drugs would be found in the [defendant's] truck" to justify detention of the vehicle to conduct a canine sniff. 2007-NMSC-043, ¶ 22. The facts of *Neal* are instructive. Prior to the stop, the officer observed a truck parked outside a house under surveillance for drug activity. *Id.* ¶ 4. The defendant was in the driver's seat and another man was leaning into the truck through the driver's side window. *Id.* The officer could not see the two individuals' hands or hear what they were saying, but believed that he had observed

7

a drug transaction. *Id.* ¶ 5. The officer decided to approach the vehicle to talk with the two individuals, but before he could, the truck drove away and the man returned to the house. *Id.* The officer followed the truck in his patrol car and subsequently pulled the defendant over for a cracked windshield. *Id.* During the stop, he recognized the defendant as an individual with prior drug and assault convictions, and he also learned that the man he saw leaning into the defendant's vehicle was an individual the officer knew had been involved in other criminal activity and who was currently under investigation for drugs. *Id.* ¶¶ 5, 7. The defendant became nervous during the stop, avoided eye contact with the officer, appeared as though he wished to leave, and did not give the officer his consent to search the vehicle. *Id.* ¶¶ 7-8.

{11}    Our Supreme Court held that the totality of the foregoing circumstances did not constitute "the type of individualized, specific, articulable circumstances necessary to create reasonable suspicion that [the d]efendant himself was involved in criminal activity." *Id.* ¶ 31. Reasonable suspicion was found lacking despite the defendant's stop in front of a house under surveillance for drug activity, his conversation with a convicted felon under investigation for drug activity, his behavior during the traffic stop, and his refusal to allow the officer to search his car. *Id.* ¶¶ 28-31. Even considering the officer's specialized training, our Supreme Court concluded that it was

8

not reasonable for the officer to infer that the defendant had been involved in a drug transaction and that the officer, therefore, had reasonable suspicion to detain the vehicle. *Id.* ¶ 31. Instead, our Supreme Court agreed that "these circumstances smack more of the type of conjecture and hunch we have rejected in the past as insufficient to constitute reasonable suspicion" and thus the officer "lacked the requisite reasonable suspicion to detain [the d]efendant's truck to await a canine sniff." *Id.* ¶¶ 31-32.

{12} As in *Neal*, the core issue before us in this case is whether the detectives had specific and articulable facts to support a reasonable suspicion that Defendant was selling drugs at the park. Prior to his seizure, Detective Linson was observing another man in a parked truck at a public park when Defendant pulled up in his vehicle. Although the police had received complaints from residents about possible narcotics activity in the area, the district court found that the park "is not the most notorious park for drug deals" in Albuquerque and that Detective Linson had acknowledged that "there is a possibility of drug activity in any public place." Additionally, Detective Linson testified on cross-examination that he did not know what the relationship between these two individuals was, and he had no prior knowledge of Defendant, the driver, or their vehicles. There was no evidence that Defendant, the driver, or the park

itself were the subjects of a specific police operation to investigate drug crimes like the residence and the defendant's associate in *Neal*.

{13} After Defendant parked his vehicle behind the truck, Detective Linson watched the driver approach Defendant's vehicle to make what appeared to be a three- to four-second, hand-to-hand transaction in which an unknown item was exchanged. The detective was unable to identify what was exchanged between the two men; only that "some type of item [was] exchanged between the two," and he gave no further explanation of what he believed the item to be or which individual was the recipient of the item. Based on these limited facts, the detectives believed Defendant was selling drugs.

{14} The State challenges the district court's reliance on *Neal* in granting Defendant's motion to suppress, contending that the district court "erroneously determined that *Neal* controls the outcome in this case." Defendant responds that "the facts of [Defendant's] case clearly mirror the Supreme Court's determination in *Neal* and require suppression of the evidence." We agree with Defendant. The facts in *Neal* more strongly suggested reasonable suspicion for the seizure than the facts before us in this case, and in *Neal*, our Supreme Court held that reasonable suspicion was lacking.

{15}     In light of the totality of these circumstances and our Supreme Court's conclusion in *Neal*, we affirm the order of the district court holding that the detectives did not have reasonable suspicion to seize Defendant in the Walgreens parking lot.

**CONCLUSION**

{16}     The district court order granting Defendant's motion to suppress is affirmed.

{17}     **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**JONATHAN B. SUTIN, Judge**