This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36944**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RICKY FRANCO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**M. ZAMORA, Judge.**

**{1}** Defendant Ricky Franco pleaded guilty to possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2019), conditioned upon the right to appeal the denial of his motion to suppress. Defendant was arrested after law enforcement officers discovered methamphetamine on Defendant during an investigatory stop that occurred within the investigation of shoplifting. On appeal, Defendant contends that the seizure was unreasonable because: (1) the investigatory

detention was for a completed misdemeanor and was therefore unconstitutional; and (2) police did not have individualized reasonable suspicion of any wrongdoing on Defendant's part. Concluding that there was reasonable suspicion that Defendant had violated the law, we affirm the district court's denial of Defendant's suppression motion.

## BACKGROUND

**{2}** Between 9:40 pm and 10:40 pm, Officers Justin Ramirez and Christopher Nevarez of the Las Cruces Police Department arrived at Walmart to investigate a complaint from Walmart regarding "two subjects shoplifting." This complaint included information about Defendant including his name and license plate number. When the officers arrived, Walmart personnel informed them that Defendant was with a "blonde female" who was shoplifting makeup products. The officers then made contact with Defendant who was alone in the parking lot. Because the blonde female was not present, the officers determined they had no reason to hold Defendant and left.

**{3}** Later, at around 2:00 am, Officer Nevarez saw Defendant driving about half a mile from Walmart with a blonde female passenger who matched the description of the Walmart shoplifter reported earlier in the night. Officer Nevarez pulled the vehicle over and asked Defendant if he could talk to him outside the vehicle. During the stop, Officer Nevarez discovered methamphetamine in Defendant's possession.

**{4}** Defendant filed a motion to suppress, arguing that the seizure was unlawful due to "time, location, and lack of specific individualized reasonable suspicion regarding Defendant." Defendant also argued that Officer Nevarez was not justified in the inception of the stop because he stopped the vehicle to investigate "previous crimes." The district court explained that the test from *United States v. Hensley*, 469 U.S. 221 (1985) required that the court "balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 228. The district court denied the motion, determining that the stop was lawful because Defendant was connected with the individual the officers suspected of shoplifting. The district found that it is not an uncommon practice for an individual to go into a store to shoplift and the accomplice to later pick up the individual.[1] Defendant appeals.

## DISCUSSION

### Standard of Review

**{5}** A district court's ruling on a motion to suppress is a mixed question of law and fact. *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "Typically, this review is a two-step process: we first look for substantial evidence to support the

---

[1]It does not appear there was any evidence presented of this practice; however, this finding is not challenged by Defendant. Consequently, this unchallenged finding is binding on appeal. *See Robey v. Parnell*, 2017-NMCA-038, ¶ 22, 392 P.3d 642 ("An unchallenged finding of the trial court is binding on appeal." (internal quotation marks and citation omitted)).

[district] court's factual finding, with deference to the district court's review of the testimony and other evidence presented[;] and we then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable." *Id.*

**The Investigatory Detention Did Not Violate the Fourth Amendment**

**{6}**     Both the United States Constitution and the New Mexico Constitution protect a citizen against unreasonable searches and seizures. U.S. Const. amend. IV; N.M. Const. art. II, § 10.[2] "When an officer stops an automobile and detains the occupants for an investigatory stop, the officer has effected a 'seizure.' " *State v. Funderburg*, 2008-NMSC-026, ¶ 13, 144 N.M. 37, 183 P.3d 922.

**{7}**     We begin with addressing whether Defendant was seized, so as to invoke the Fourth Amendment protections and require the officers to have reasonable suspicion that Defendant was engaged in criminal activity. "It is well established that the initiation of a traffic stop constitutes a seizure of the vehicle's occupants." *State v. Portillo*, 2011-NMCA-079, ¶ 12, 150 N.M. 187, 258 P.3d 466; *State v. Affsprung*, 2004-NMCA-038, ¶ 9, 135 N.M. 306, 87 P.3d 1088 ("With respect to a driver, a traffic stop is a seizure under the Fourth Amendment."). "A seizure takes place when the officer detains the individual in such a way that a reasonable person would not feel free to leave, given the totality of the circumstances." *State v. Patterson*, 2006-NMCA-037, ¶ 18, 139 N.M. 322, 131 P.3d 1286. The State does not dispute that Defendant was seized when Officer Nevarez pulled him over. Defendant was pulled over when driving and asked to step out of the car for questioning. Indeed, Officer Nevarez testified that Defendant was not free to leave. Therefore, Defendant was seized as part of the investigatory detention.

**{8}**     New Mexico courts follow a two-part test to analyze the reasonableness of an officer's actions during an investigatory detention: "the officer's action must have been justified at its inception, and it must have been reasonably related in scope to the circumstances which justified the interference in the first place." *Funderburg*, 2008-NMSC-026, ¶ 13 (alterations, omissions, internal quotation marks, and citation omitted). Defendant limits his challenge to the first part of the inquiry: whether the stop was justified at its inception. Specifically, Defendant challenges the district court's denial of his motion to suppress on the basis that the initial investigatory stop of the vehicle was unreasonable because (1) Officer Nevarez's seizure was unconstitutional because it was a stop of a completed misdemeanor; and (2) Officer Nevarez lacked individualized reasonable suspicion that Defendant had committed any wrongdoing. We address each point in turn.

---

2Defendant argues that the seizure was unreasonable under both the United States Constitution and the New Mexico Constitution. "We have defined and applied the reasonable suspicion standard in the same way when conducting both Fourth Amendment and Article II, Section 10 analyses." *State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858. "[O]ur case law is clear that the New Mexico Constitution affords no greater protection against investigatory traffic stops than does the Fourth Amendment." *State v. Farish*, 2018-NMCA-003, ¶ 20, 410 P.3d 239, *cert. granted*, 2017-NMCERT-___, (No. S-1-SC-36638, Oct. 10, 2017). We therefore do not treat the claims differently.

**A.     The Investigation Into a Completed Nonviolent Crime Did Not Make the Stop Unconstitutional**

**{9}**     "A brief detention for investigatory purposes is a seizure entitled to Fourth Amendment protections." *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. All seizures under the Fourth Amendment must be reasonable. *See id.* A stop is reasonable when "a reasonable person [would] believe [that] criminal activity *occurred or was occurring.*" *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (emphasis added) (internal quotation marks and citation omitted).

**{10}**     Because Defendant was pulled over for suspicion of shoplifting, Defendant urges this Court to adopt a categorical ban from the Sixth Circuit and Minnesota and conclude that warrantless stops to investigate completed misdemeanors are per se unconstitutional. In the alternative, Defendant argues that under the balancing test from *Hensley*, 469 U.S. 221, the seizure is still unreasonable "because it was a warrantless investigatory detention for a completed misdemeanor, and the misdemeanor— shoplifting makeup—did not threaten public safety."

**{11}**     At the outset, we note that we are not persuaded by Defendant's arguments that our analysis should be altered because this case involves a completed misdemeanor. Importantly, there is nothing in the record before us—and there was nothing in the record before the district court—to demonstrate that the underlying charge that the blonde female was convicted of was a misdemeanor. We will not expand the scope of our caselaw based on evidence not presented to the district court. The State argues, in response, that we have settled caselaw to resolve the remaining question presented by Defendant's argument—that is, whether police may stop a car to investigate; and whether an occupant has committed a non-violent crime. We agree.

**{12}**     We have held that an investigatory stop was valid where the defendant was an occupant of a vehicle detained for suspicion of the completed crime of littering. In *State v. Taylor*, 1999-NMCA-022, 126 N.M. 569, 973 P.2d 246, *overruled on other grounds by State v. Leyva*, 2011-NMSC-009, 149 N.M. 435, 250 P.3d 861, an officer pulled over a car based on a citizen complaint that someone in the vehicle was littering. *Taylor*, 1999-NMCA-022, ¶ 2. The officers eventually found narcotics in the car of the defendant-driver. *Id.* ¶ 4. The defendant moved to suppress, and the question for this Court was whether the information from the complaint "would warrant a person of reasonable caution to believe that [the d]efendant had violated or was violating a law." *Id.* ¶¶ 5, 8. We held that the citizen's complaint was reliable and concluded that a person of reasonable caution would have believed that the defendant was violating a law. *Id.* ¶ 8. Accordingly, we held that the initial investigatory detention was valid. *Id.*

**{13}**     We have also held that an officer may stop a vehicle where the officer has a reasonable suspicion that an occupant of the vehicle was involved in the criminal activity under investigation. In *State v. Funderburg*, 2007-NMCA-021, ¶¶ 8-9, 141 N.M. 139, 151 P.3d 911, *rev'd on other grounds*, 2008-NMSC-026, ¶¶ 7-9, the officer had been called to the casino to investigate a report of a bounced check. *Funderburg*, 2007-

NMCA-021, ¶ 2. The officer at that point was provided with the name of the suspect, who had since left the casino, and evidence regarding his alleged crime. *Id.* Hours later, a casino employee called the police again to notify that the individual had returned to the casino, but was leaving in a dark-colored sedan. *Id.* The officer stopped the dark-colored sedan as part of the investigation of the supposed forgery. *Id.* The officer responded "immediately," and stopped the only dark-colored sedan that was exiting the property at that time. *Id.* ¶ 8. The officer learned that the forgery suspect was a passenger. *Id.* ¶ 3. The defendant was the driver of the vehicle. The defendant challenged the detention, and we held that due to the totality of the circumstances—"the description of the vehicle, and the fact that the suspect . . . was said to be in it"—the officer had reasonable suspicion to make an investigatory stop. *Id.* ¶¶ 8-9.

**{14}** Here, Officer Nevarez pulled over Defendant and the blonde female based on the Walmart employee complaint that Defendant and the blonde female had shoplifted earlier in the evening. Defendant does not dispute the reliability of the Walmart complaint. Like *Taylor* and *Funderburg*, Defendant was pulled over for the investigation of a completed nonviolent crime. In *Funderburg*, this alleged crime occurred hours earlier, as is the case here.

**{15}** Accordingly, because our caselaw is settled that police may stop a car to investigate whether an occupant has committed a non-violent crime, we decline Defendant's invitation to alter our jurisprudence in this arena. We now turn to Defendant's challenge to Officer Nevarez's individualized reasonable suspicion.

**B.      Officer Nevarez Had Individualized Reasonable Suspicion of Defendant to Support the Investigatory Detention**

**{16}** Defendant argues that Officer Nevarez did not have individualized reasonable suspicion that he had violated any law because he stopped Defendant to investigate his female passenger for shoplifting, and thus had no reasonable suspicion as to Defendant.

**{17}** "Not only must an officer have an objective basis for suspecting that criminal activity is afoot, but the suspicion must also be particularized to the individual who is stopped." *Yazzie*, 2016-NMSC-026, ¶ 31. "Police officers possess reasonable suspicion when they are aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Urioste*, 2002-NMSC-023, ¶ 6 (internal quotation marks and citation omitted). We measure reasonable suspicion by the totality of the circumstances. *State v. Prince*, 2004-NMCA-127, ¶ 10, 136 N.M. 521, 101 P.3d 332.

**{18}** Defendant cites *State v. Patterson*, 2006-NMCA-037, 139 N.M. 322, 131 P.3d 1286 and *Affsprung,* 2004-NMCA-038, in support of his argument. Both cases are distinguishable. In *Patterson*, 2006-NMCA-037, this Court examined whether law enforcement officers had individualized, particular suspicion of the passenger-defendant prior to initiating a seizure. *Id.* ¶ 1. In that case, the defendant was a passenger in a

vehicle in which law enforcement observed an open container of beer on the floorboard of the back seat. *Id.* ¶ 3. The Court had to determine whether this open container was sufficient to raise individualized reasonable suspicion that the front seat passenger possessed "on his person" an open container of alcohol. *Id.* ¶¶ 23, 28. This Court noted that the officer did not observe the defendant with or near an open container, but rather, the only fact concerning the defendant was that he was present in the car. *Id.* ¶ 28. We held that mere presence in the car without more was insufficient to create individualized reasonable suspicion that the defendant was violating the "open container" law. *Id.*

**{19}** In *Affsprung*, we likewise held that the defendant's mere presence as a passenger in a vehicle stopped for a traffic violation did not provide individualized suspicion for the officer to ask for the passenger's identification. 2004-NMCA-038, ¶ 20. In that case, the law enforcement officer stopped a vehicle in which the defendant was a passenger, for a faulty license plate light. *Id.* ¶ 2. The officer, observing no suspicious behavior from the defendant, asked the defendant for identification. *Id.* ¶¶ 2, 4. The officer then ran a wants and warrants check of the defendant, discovering an outstanding warrant. *Id.* ¶¶ 2-3. We held that the defendant's "mere presence" in the stopped vehicle, where the officer had "no suspicion whatsoever of criminal activity or danger of harm from weapons[,]" could not justify even a "minimal intrusion to tip the balance in favor of public or officer safety over individual Fourth Amendment privacy." *Id.* ¶ 20.

**{20}** These cases are distinguishable from the present case. The *Patterson* and *Affsprung* defendants were detained based upon their "mere presence" in a vehicle, and upon a generalized concern arising from illegal activity of the other occupants of the vehicles. Here, the officers were given Defendant's name and license plate number as part of the shoplifting complaint. Defendant was not in the "mere presence" of the suspected shoplifter, but rather was part of the original complaint about "two suspects shoplifting." While Officers Ramirez and Nevarez had already talked to Defendant alone earlier in the parking lot, and determined that they had no reason to continue to hold him at that time, the district court found that it is not unusual for a shoplifting suspect to be picked up later by an accomplice. Considering the facts and circumstances known to Officer Nevarez when he saw Defendant driving with the blonde female, we conclude that Officer Nevarez had individualized reasonable suspicion to pull Defendant over and ask to speak to him. We hold that the investigatory stop of Defendant was lawful.

## CONCLUSION

**{21}** For the aforementioned reasons, we affirm the district court's denial of Defendant's motion to suppress.

**{22} IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**