2008-NMCA-130

192 P.3d 1255

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Dan McCLENNEN, Defendant–Appellant.**

**No. 26,948.**

Court of Appeals of New Mexico.

Aug. 11, 2008.

Gary K. King, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

J. Robert Beauvais, P.A., J. Robert Beauvais, Ruidoso, NM, for Appellant.

## OPINION

CASTILLO, Judge.

### I. BACKGROUND

{1} Defendant was arrested for racing on a public highway and driving while intoxicated (DWI). During the booking process, the arresting officer conducted an inventory search of Defendant's belongings. The officer found a laminated card in Defendant's wallet, and on the card was a white powdery substance. The officer placed the card on the table and turned away in order to find a field test kit. The officer testified that in his peripheral vision, he saw Defendant use his thumb to swipe the card and then place his thumb in his mouth. The officer then conducted a field test on the remaining powder, but no sample was sent to the state forensic laboratory.

{2} Defendant was charged with the following four counts: (1) aggravated driving while under the influence of intoxicating liquor or drugs, contrary to NMSA 1978, § 66–8–102(D) (2004) (amended through 2008); (2) racing on a highway, contrary to NMSA 1978, § 66–8–115 (1978); (3) possession of a controlled substance, contrary to NMSA 1978, § 30–31–23(A) (1990) (amended through 2005); and (4) tampering with evidence, contrary to NMSA 1978, § 30–22–5 (2003). Defendant filed several motions prior to trial, including a motion to prevent the use of or reference to the results of the field test. Defendant argued that because the State would not present an expert witness to provide a scientific evidentiary foundation for the field testing, the field test results were inadmissible.

{3} On the morning of the trial, the court ruled that the results of the field test were inadmissible to establish the identity of the substance without an expert to establish a foundation for the reliability and validity of the test, and the trial court dismissed the count for possession of cocaine as a result of that ruling. During the trial, the trial court directed a verdict for Defendant on the count of racing on a highway because the State did not provide sufficient evidence to sustain the charge. The two remaining counts—aggravated DWI and tampering with evidence—were submitted to the jury, which found Defendant guilty of both. The trial court sentenced Defendant to two years and six months of incarceration but suspended all but forty-eight hours of the sentence in favor of probation pursuant to certain conditions. Defendant appeals the judgment.

### II. DISCUSSION

{4} Defendant makes two arguments on appeal. First, Defendant contends that the trial court incorrectly refused to instruct the jury on a lesser included offense of attempted tampering with evidence. Second, Defendant argues that the trial court improperly allowed the State's witnesses to identify the white powdery substance as cocaine when a scientific foundation was not laid for the field test procedure and a forensic test was not conducted at a laboratory. We address each argument in turn.

### A. Jury Instruction

{5} "The propriety of jury instructions given or denied is a mixed question of law and fact," which we review de novo. *State v. Ervin*, 2008–NMCA–016, ¶ 34, 143 N.M. 493, 177 P.3d 1067 (internal quotation marks and citation omitted), *cert. denied*, 2008–NMCERT–001, 143 N.M. 398, 176 P.3d 1130. "In order to receive a jury instruction on a lesser[ ]included offense, there must be evidence that the lesser offense is the highest degree of crime committed." *Id.* (internal

quotation marks and citation omitted). At trial, Defendant requested a jury instruction on a lesser included offense of attempt to tamper with evidence, and the trial court denied the requested instruction.

{6} An attempt to commit a felony "consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (1963). In the present case, the trial court determined that the tampering charge was a fourth degree felony pursuant to Section 30–22–5(B)(4), which explains that "if the highest crime for which tampering with evidence is committed is indeterminate, the person committing tampering with evidence is guilty of a fourth degree felony." Defendant does not challenge this determination. Tampering with evidence is defined as "destroying, changing, hiding, placing or fa-. bricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Section 30–22–5(A). Defendant contends that because an amount of powdery white substance remained on the card, the evidence established that he did not successfully destroy the powder and that the highest degree of the crime committed was attempting to tamper with evidence. We disagree.

{7} "The primary indicator of legislative intent is the plain language of the statute." *State v. Whittington*, 2008–NMCA–063, ¶ 11, 144 N.M. 85, 183 P.3d 970. The tampering statute makes it illegal to destroy "any physical evidence." Section 30–22–5(A). There is no dispute that the powder was evidence and that Defendant destroyed it. As a result, Defendant did not fail to tamper with the evidence, and thus there was no evidence to support the attempt instruction.

{8} Defendant cites *State v. Mendez*, 175 N.J. 201, 814 A.2d 1043 (2002), to support the proposition that when a defendant is charged with a possession crime and the defendant attempts to destroy evidence but fails, the defendant has attempted to tamper with physical evidence. *Mendez* considered the interplay between New Jersey's possession statute and its tampering statute. *Id.* at 1047. In distinguishing two other New Jersey cases, the *Mendez* court concluded that "the crime of tampering with evidence of a possessory crime includes as a necessary element the permanent alteration, loss, or destruction of the evidence itself" and that the failure to get rid of evidence "served as a functional equivalent of an unsuccessful *attempt* to tamper with physical evidence." *Id.* at 1049. The *Mendez* court reasoned that "unlike one who conceals or discards [drugs] later retrieved by the police, the person who destroys such evidence after possessing it forecloses forever its recovery and introduction at trial." *Id.* at 1050. We first observe that the *Mendez* court focused "solely on whether the [New Jersey] Code preclude[d] a simultaneous charge under the possession and evidence-tampering statutes when an accused allegedly ha[d] destroyed all or part of the evidence." *Id.* at 1051. There is no similar issue in the present case. We therefore find *Mendez* to be legally distinct from the present case.

{9} Defendant also cites *A.F. v. State*, 850 So.2d 667 (Fla.Dist.Ct.App.2003), to support his conclusion that this Court should require the State to prove that Defendant "completely obliterated [or] destroyed the evidence to the point it cannot be used in furtherance of a criminal prosecution." A review of *A.F.* reveals that the case does not stand for such a broad requirement. The *A.F.* court simply concluded that the evidence was insufficient to support anything more than attempted tampering with evidence. *Id.* at 668. The defendant in *A.F.* placed a bag of drugs in her mouth in order to swallow it, but she could not and was forced to spit it out. *Id.* These facts are distinguishable from those in the present case because in *A.F.* the defendant did not successfully conceal or destroy any evidence, while here Defendant successfully destroyed a portion of the powdery substance.

{10} We also reject Defendant's argument that evidence must be destroyed so that it cannot be used in a criminal prosecution to support a conviction pursuant to Section 30–22–5. That argument is at odds with the language of the statute. Section 30–22–5(A) seeks to punish those who destroy evi-

dence with the "intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." There is no requirement that the destruction of evidence lead to the actual prevention of apprehension, prosecution, or conviction; the statute merely requires the state to prove that a defendant intended for that result. Defendant demonstrated his intent by successfully destroying a portion of the white powdery substance. There is no evidence that Defendant tried but failed to destroy the powdery substance completely. A lesser included instruction for attempted tampering with evidence was therefore unwarranted, and the trial court properly denied Defendant's request. *See State v. Paiz*, 2006–NMCA–144, ¶ 50, 140 N.M. 815, 149 P.3d 579 ("An instruction on a lesser[ ]included offense is only warranted if there is some reasonable view of the evidence pursuant to which the lesser offense is the highest degree of crime committed.").

## B. Field Test Results

{11} "A trial court's evidentiary rulings are reviewed for abuse of discretion." *State v. Soto*, 2007–NMCA–077, ¶ 10, 142 N.M. 32, 162 P.3d 187. At trial, the court permitted a police officer to testify about the results of a presumptive field test in order for the State to establish that the powder constituted "any physical evidence," as required by Section 30–22–5(A). Defendant argues that (1) this ruling was incorrect because the officers were not qualified to lay the foundation necessary for the admission of presumptive field test results and (2) the results of the test were so highly prejudicial as to require a new trial. The State contends that the results of the test were admissible and, in the alternative, that if allowing the testimony was error, it was harmless. We consider first whether the arresting officer's testimony regarding the field test results was admissible.

## 1. Admissible Testimony

{12} Before the results of a field test can be introduced to prove the identity of contraband, the state must establish the scientific reliability of the test and the validity of the scientific principles on which the field test is based. *State v. Morales*, 2002–NMCA–052, ¶ 23, 132 N.M. 146, 45 P.3d 406. The testimony of a law enforcement officer is insufficient to meet this standard "when the officer cannot explain the scientific principles that the test uses, the percentage of false positives or negatives that the test will produce, or the factors that may produce those false results." *Id.* The State does not attempt to argue that the testifying officers in the present case had the requisite knowledge to lay a scientific foundation for the field test kit. Instead, the State contends that the results were not offered for the purpose of establishing the identity of the substance, but, rather, to show the evidentiary value of the powder. What the State fails to recognize is that if the field test did not achieve valid and reliable results, then testimony regarding the result would not have any evidentiary value. *See id.* ¶ 21 (requiring a showing that "the underlying scientific technique or method is reliable enough to prove what it purports to prove, that is probative, so that it will assist the trier of fact" (internal quotation marks and citation omitted)). We therefore hold that the field test results were improperly admitted into evidence because the State failed to lay the proper foundation. Next, we turn to examine whether this error is grounds for reversal. *See id.* ¶ 24 (considering whether an error was harmless and therefore "not grounds for reversal").

## 2. Harmless Error

{13} "Improperly admitted evidence is harmless error only if there is no reasonable possibility that the evidence might have contributed to the conviction." *Id.* This Court employs a three-factor analysis in order to determine whether error was harmless:

(1) whether there is substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) whether there is such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence appears so minuscule that it could not have contributed to the conviction; and (3) whether there is substantial conflicting evidence to discredit the State's testimony.

*Id.* In the present case, Defendant does not deny that he swiped the powder from the card and ate it. In fact, all of Defendant's actions were videotaped, and that videotape was presented to the jury. The arresting officer testified that when he saw the card with the powder on it, he asked his partner to look at it. The officers agreed that it was probably an illicit substance and decided to do a field test. One officer had difficulty locating the test kits, and the other officer turned to help. At that point, Defendant destroyed the evidence on the card. From this testimony, without any reference to the administration or results of the field test, a jury could reasonably infer that Defendant destroyed the substance with the intent to prevent prosecution or conviction. Accordingly, the first element of harmless error is satisfied.

{14} This same evidence also establishes the second element. The testimony about the results of the test could not have contributed to conviction for two reasons. First, the identity of the substance was not an element of the crime. The tampering statute only punishes the destruction of physical evidence and not the destruction of contraband. *See* § 30–22–5(A). Second, only the results of the test were inadmissible under *Morales. See* 2002–NMCA–052, ¶ 23, 132 N.M. 146, 45 P.3d 406 (holding only that "testimony by a law enforcement officer will *not*, without more, be sufficient to support admission of the *results* " of a field test (emphasis added)). The only inadmissible testimony was the arresting officer's statement that the field test kit "indicat[ed] a positive test for cocaine." The other admissible testimony included the videotape, the statements of the officers regarding the timing of the incident, and even the officers' testimony about the administration of the field test. The single statement about the results appears to be minuscule in proportion to the volume of other admissible evidence presented.

{15} With regard to the third factor, Defendant attempted to establish that he did not destroy the evidence with the intent to prevent prosecution or conviction. Defendant argued that he intended only to taste the powder in order to determine what it was. As Defendant did not testify, there is no evidence in the record to support this theory other than argument by Defendant's counsel, which the jury apparently rejected. *See State v. Jernigan,* 2006–NMSC–003, ¶ 23, 139 N.M. 1, 127 P.3d 537 (acknowledging that a jury's verdict is evidence that the jury rejected an argument contrary to that verdict). Thus, there is not substantial evidence in the record to discredit the State's evidence. Based on our consideration of the harmless error factors, we conclude that the trial court improperly allowed testimony about the results of the field test but that it was harmless error. Because we hold that admission of the testimony was harmless error, we do not further address Defendant's claims that the testimony was prejudicial. *See State v. Zamora,* 91 N.M. 470, 474, 575 P.2d 1355, 1359 (Ct.App.1978) (defining "harmless error" as "an error which is trivial or formal or merely academic and was not prejudicial to the substantial rights of the party assigning it" (internal quotation marks and citation omitted)).

## III. CONCLUSION

{16} We affirm the trial court.

{17} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL D. BUSTAMANTE, Judges.