This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **No. A-1-CA-36342**

**CHRYSANTHIE CHRISSOS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** A jury found Defendant Chrysanthie Chrissos guilty of possession of a controlled substance (heroin) in violation of NMSA 1978, Section 30-31-23 (1978). The district court granted her a conditional discharge pursuant to NMSA 1978, Section 30-31-28 (1972). On appeal, Defendant argues that (1) the district court erred when it denied her motion to suppress the heroin and other physical evidence seized during her investigative detention; (2) the district court erred by admitting various segments of a lapel video; (3) the admission of the lapel video violated her right against self-

incrimination; (4) the evidence is insufficient to support the jury's guilty verdict; and (5) the district court erred when it denied her motion for mistrial. Unpersuaded, we affirm.

**BACKGROUND**

**{2}** Sergeant Johnny Yara was patrolling in Albuquerque when he received information from dispatch about a tip from a named person regarding "a suspicious male and female in the area, looking in windows, near 532 Adams[.]" The tip included a physical description of the woman. According to the tipster, who was observing the man and woman, the woman "seemed to be on narcotics[.]" The tipster "wanted [the man and woman] removed from the area."

**{3}** Approximately ten minutes after receiving the tip, Sergeant Yara found a woman who matched the tipster's description in an alleyway less than half a block away from the location the tipster provided. The woman was Defendant. Sergeant Yara drove down the alleyway toward Defendant, who "was sitting in a little area where there's a door to the building." Still in his vehicle, Sergeant Yara noticed that Defendant "had an unknown item . . . that she tried to kind of cover with her body." To Sergeant Yara, "it looked like she was manipulating something."

**{4}** Sergeant Yara testified that he immediately "jumped out of [his] truck" and ordered Defendant to show him her hands. He then "asked her to move away from [the unknown item], due to officer safety reasons[.]" After Defendant complied, Sergeant Yara "noticed a spoon with a brown liquid substance in it" and "a couple of needles." He recognized the substance as heroin. Sergeant Yara handcuffed Defendant and performed a field test, which indicated that the substance in the spoon was likely heroin. He arrested Defendant and searched a backpack that she identified as hers. He found additional drug paraphernalia and a baggie containing approximately .20 grams of a substance that tested presumptively positive for heroin.

**{5}** According to Sergeant Yara, he detained Defendant in a "high burglary area," but he did not describe the boundaries of this area or provide any information about its size. Sergeant Yara also testified that he knew from his time as an undercover narcotics detective that people frequently sold drugs in the alleyway where he found Defendant.

**{6}** The State charged Defendant with possessing heroin in violation of Section 30-31-23. She moved to suppress the drugs, paraphernalia, and other physical evidence.[1] Defendant argued that Sergeant Yara detained her as soon as he drove into the alleyway and made a show of authority, and that this detention was not based on a reasonable suspicion that she had committed any crime. Although the State agreed with Defendant that Sergeant Yara had detained her, the State argued that Sergeant Yara had reasonable suspicion.

---

1 Defendant also moved to suppress her statements. The district court granted the motion, and the State did not appeal.

**{7}** The district court denied Defendant's motion. The court concluded that "[t]he State established reasonable suspicion for Sergeant Yara to approach Defendant, [and], based on officer safety, ask Defendant to move away from what she was concealing." The court noted "that reasonable suspicion was established based on the text of the CAD Reports from the 911 call and the information provided in the call[.]"

**{8}** A jury found Defendant guilty of possession of heroin. The district court initially sentenced Defendant to eighteen months' imprisonment, six months of which was suspended. However, the court granted Defendant's motion to reconsider her sentence and entered an order of conditional discharge. Defendant appeals.

## DISCUSSION

### I. Defendant's Appeal Is Not Moot

**{9}** The State argues that Defendant's appeal is moot because she received a conditional discharge under Section 30-31-28 and because the district court ultimately dismissed the charges against her, leaving her without a conviction and without an adjudication of guilt. We disagree.

**{10}** "An appeal is moot when there is no actual controversy and when no actual relief can be granted to the appellant." *State v. Favela*, 2013-NMCA-102, ¶ 13, 311 P.3d 1213 (internal quotation marks and citation omitted). We have held that appeals in criminal cases are not moot when the disposition of the case could have collateral consequences in subsequent criminal cases, *State v. Lope*, 2015-NMCA-011, ¶ 11, 343 P.3d 186, in immigration proceedings, *Favela*, 2013-NMCA-102, ¶ 15, and for applications for employment and education, *State v. Merhege*, 2016-NMCA-059, ¶ 8, 376 P.3d 867, *rev'd on other grounds*, 2017-NMSC-016, 394 P.3d 955.

**{11}** Defendant's appeal presents an actual controversy because the district court's disposition of her case has potential collateral consequences of at least two kinds. Each suffices, standing alone, to support our rejection of the State's mootness argument. First, as Defendant argues, if the current disposition of this case remains in place, Defendant will never again have the opportunity to receive a conditional discharge for drug possession pursuant to Section 30-31-28. Subsection (C) of the statute states that "[d]ischarge and dismissal under this section may occur only once with respect to any person." Section 30-31-28(C). Whether Defendant will be eligible for a conditional discharge in a future possession case could turn on the outcome of this appeal.

**{12}** Second, the current disposition of Defendant's case could have collateral consequences for her education and employment. We agree with the State that the district court's disposition of this case did not produce a conviction and does not include an adjudication of guilt. Section 30-31-28(C) states, in pertinent part, that "[d]ischarge and dismissal . . . shall be without court adjudication of guilt," and that "[a] discharge or dismissal shall not be deemed a conviction[.]" We have recognized that where, as here, a defendant successfully completes probation, earning a dismissal and discharge, the

result is "the eradication of the guilty plea or verdict" with no conviction. *State v. Fairbanks*, 2004-NMCA-005, ¶ 10, 134 N.M. 783, 82 P.3d 954. Nevertheless, Defendant might be obligated to disclose the disposition of this case in an application for employment or education. We have recognized that the possibility of having to make such disclosures, "while somewhat speculative," is a "potentially significant consequence[]" that requires us to reject a suggestion of mootness. *Merhege*, 2016-NMCA-059, ¶ 8.

## II.      Motion to Suppress

{13}    Defendant claims the district court erred by denying her motion to suppress the heroin and other physical evidence that Sergeant Yara seized as a result of the investigative detention. Specifically, Defendant argues that when Sergeant Yara detained her, he lacked reasonable suspicion to believe that she had committed, or was about to commit, a crime. According to Defendant, the tip that Sergeant Yara relied on did not implicate her in any criminal activity, and Sergeant Yara relied on a speculative hunch.

### A.      Standard of Review

{14}    Our "review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922 (internal quotation marks and citation omitted). Because neither party challenges the district court's findings of fact, we review only the legal conclusions the district court drew in denying Defendant's motion to suppress. *State v. Morales*, 2005-NMCA-027, ¶ 8, 137 N.M. 73, 107 P.3d 513. We "review the entire record to determine whether there was sufficient evidence to support the [district] court's denial of the motion to suppress." *State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134. Our task is to review the application of the law to the unchallenged facts, "making a de novo determination of the constitutional reasonableness of a search or seizure." *State v. Olson*, 2012-NMSC-035, ¶ 9, 285 P.3d 1066 (internal quotation marks and citation omitted).

### B.      Fourth Amendment Principles Governing Investigative Detentions

{15}    We agree with the parties that Sergeant Yara's initial detention of Defendant, which occurred when he ordered her to show him her hands, was an investigative detention. Under the Fourth Amendment,[2] such detentions "must be justified by something less than probable cause but more than an inarticulate hunch." *State v. Lopez*, 1989-NMCA-030, ¶ 7, 109 N.M. 169, 783 P.2d 479. Stated differently, a

---

2 Although Defendant arguably preserved an argument that Article II, Section 10 of the New Mexico Constitution affords her greater protection than the Fourth Amendment to the United States Constitution in this context, she makes no such argument on appeal. We therefore assume without deciding that both constitutions offer the same protection with respect to all of the issues we address in this opinion and we analyze those issues using the federal constitutional standard. *See Funderburg*, 2008-NMSC-026, ¶ 12; *State v. Jason L.*, 2000-NMSC-018, ¶ 9, 129 N.M. 119, 2 P.3d 856.

detention must rest on "specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Funderburg*, 2008-NMSC-026, ¶ 14 (internal quotation marks and citation omitted). "[G]eneralized suspicions are insufficient grounds upon which to base an investigatory detention." *State v. Prince*, 2004-NMCA-127, ¶ 17, 136 N.M. 521, 101 P.3d 332. Our Supreme Court has explained that "[a] reasonable suspicion is a particularized suspicion, based on all the circumstances[,] that a particular individual, the one detained, is breaking, or has broken, the law." *Jason L.*, 2000-NMSC-018, ¶ 20. Whether an officer had reasonable suspicion turns on "the reliability and content of the information" the officer possessed, *State v. Robbs*, 2006-NMCA-061, ¶ 13, 139 N.M. 569, 136 P.3d 570, "at the inception of the seizure[,]" *Jason L.*, 2000-NMSC-018, ¶ 20. When determining whether reasonable suspicion has arisen from wholly lawful conduct, we analyze the degree of suspicion that attaches to the conduct at issue. *State v. Harbison*, 2007-NMSC-016, ¶ 15, 141 N.M. 392, 156 P.3d 30.

## C.  The District Court Did Not Err by Concluding That Sergeant Yara Had Reasonable Suspicion

{16}  The State contends that the following facts, considered together, constitute reasonable suspicion: (1) Sergeant Yara was investigating possible criminal activity based on a tip that a man and a woman were looking in cars and that the woman appeared to be on narcotics; and (2) Sergeant Yara knew from his experience that the area had a high incidence of narcotics activity and burglaries. We also consider Defendant's effort to conceal an unknown item because Sergeant Yara observed Defendant do so before he detained her and because the district court included that fact in its order denying Defendant's motion.

{17}  Because Defendant does not challenge the reliability of the tip in any fashion, we do not examine the type of tip at issue or determine whether corroboration is required and if so, whether the corroboration in this case was adequate. *See Alabama v. White*, 496 U.S. 325, 330  (1990) ("[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."). Instead, we assume without deciding that the tip was reliable. We therefore treat the tipster's identification of Defendant as accurate, and we require no corroboration of the tipster's statements that Defendant was looking in car windows and appeared to be under the influence of narcotics.

{18}  The State correctly points out that in determining whether there was reasonable suspicion, we must consider not only the information about Defendant that was available to Sergeant Yara, but also what he knew about the area where he detained Defendant. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that whether a "stop occurred in a 'high crime area'" is one of "the relevant contextual considerations in a *Terry* analysis," but that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion"). Sergeant Yara testified that narcotics transactions were common in the alleyway. The State's testimony about burglary was less specific. However, Defendant

does not challenge the State's assertion that burglaries were common in the area where Sergeant Yara encountered her. Nor does she argue that the State failed to present adequate evidence about the prevalence of burglary or narcotics activity in that area or that the State failed to limit the area to a specific, circumscribed location to avoid concerns about racial, economic, or socioeconomic profiling. *Cf. State v. Yazzie*, 2016-NMSC-026, ¶ 33, 376 P.3d 858 (Our Supreme Court "does not endorse using general statistical probabilities or group characteristics to establish reasonable suspicion[.]"). We therefore treat the record as establishing that burglaries and drug transactions occurred especially frequently where Sergeant Yara encountered Defendant and that the area in question was small enough to ensure that profiling was not a factor.

**{19}** The thrust of Defendant's argument on appeal is that the content of the tip and Sergeant Yara's own observations did not amount to "knowledge of an actual crime being committed." However, an officer need not have knowledge of a completed crime to detain someone. Indeed, an officer may conduct an investigative detention based on entirely lawful conduct. *Harbison*, 2007-NMSC-016, ¶ 15. Whether lawful conduct justifies an investigative detention depends on the degree of suspicion attached to the conduct. *Id.*

**{20}** Viewing the evidence in the light most favorable to the State, we conclude that the district court did not err by denying Defendant's motion to suppress. Sergeant Yara received reliable information that a woman matching Defendant's description and a male companion were looking into car windows and that Defendant appeared to be under the influence of narcotics. Sergeant Yara located Defendant in an alley less than half a block from where the tipster said he observed her, and Sergeant Yara knew burglary was especially common in that location. When he approached Defendant, she moved her body to conceal an unknown item. Under these circumstances, Sergeant Yara had reasonable suspicion to believe Defendant "[wa]s breaking, or ha[d] broken, the law[,]" *Jason L.*, 2000-NMSC-018, ¶ 20, related, for example, to narcotics or burglary.

### III. The Video Recording: Booking Photo, Bottles of Alcohol, and Field Test Results

**{21}** Defendant argues that the district court erroneously admitted certain segments of a lapel video recording that Sergeant Yara made in the alleyway on the day of her arrest. "We review the [district] court's decision to exclude or admit evidence for an abuse of discretion." *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070.

**{22}** Defendant argues first that the recording showed Sergeant Yara looking at Defendant's booking photo on the computer in his vehicle, and that this was prejudicial because it suggested she had prior convictions. *See State v. Roybal*, 1992-NMCA-114, ¶ 17, 115 N.M. 27, 846 P.2d 333 ("Generally, proof of other crimes has a tendency to prejudice the minds of the triers of fact and to predispose them to a belief in the accused's guilt."). Having carefully reviewed the portion of the recording at issue, it is not clear that it depicts a booking photo or that it depicts Defendant. Sergeant Yara's

computer monitor is visible for approximately twenty seconds. The photo is small and, at times, dark. The photo depicts a person, but it is not possible to see the person's features well enough to identify that person as Defendant. The text on the screen is too small and blurred to be legible. We are unable to discern whether the video depicts a booking photo; it could very well be some other type of photo, such as a driver's license photo. The State never suggested through testimony or argument that the photo was a booking photo or that Defendant had a criminal record. We are not persuaded that admission of this video segment ran afoul of the law governing evidence of prior convictions.

**{23}** Second, Defendant argues that the recording depicted her in possession of a box containing multiple bottles of alcohol, suggesting that she had a need for intoxicating substances. Defendant contends that this was inadmissible character evidence. We disagree. Rule 11-404(B) NMRA "is designed to prohibit admission of character traits to prove that a defendant acted in accordance with those traits." *State v. Lucero*, 1992-NMCA-107, ¶ 9, 114 N.M. 489, 840 P.2d 1255. However, "the law does not ban admission of potential propensity evidence that also goes to proving something other than Defendant's propensity to act in a certain way." *State v. Bailey*, 2017-NMSC-001, ¶ 19, 386 P.3d 1007. The State introduced the lapel video primarily to prove Defendant was in constructive possession of the heroin that was inside the backpack in the alcove where Defendant was sitting. Defendant's proximity to the backpack and the size of the alcove, both of which are depicted in the video, were key issues at trial. The video briefly shows a few bottles of alcohol in a cardboard box that is in the alcove, but does not show Defendant holding or touching alcohol. Indeed, Sergeant Yara does not open the box until Defendant is in handcuffs. The State did not seek, through argument or testimony, to suggest that Defendant's possession of alcohol was consistent with its allegation that she possessed heroin. We are not persuaded that the admission of this video segment was impermissible character evidence.

**{24}** Third, Defendant argues that a portion of the lapel video showed Sergeant Yara conducting a field test of the liquid in the spoon and that this was tantamount to introducing the results of the field test, which the district court had excluded from evidence. Defendant points out that "[b]efore the results of a field test can be introduced to prove the identity of contraband, the state must establish the scientific reliability of the test and the validity of the scientific principles on which the field test is based." *State v. McClennen*, 2008-NMCA-130, ¶ 12, 144 N.M. 878, 192 P.3d 1255, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Defendant contends that the jury could have inferred from watching the video that the result of the field test of the liquid in the spoon was positive. No such inference was necessary, however, because Sergeant Yara testified that the field test result was positive. Because that testimony is one of the bases for Defendant's argument that the district court erred by denying her motion for mistrial, we address it in our analysis of the mistrial issue.

## IV. Admission of the Video Recording Did Not Violate Defendant's Privilege Against Self-Incrimination

**{25}** Pursuant to *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶¶ 17-24, 103 N.M. 655, 712 P.2d 1, Defendant argues that admission of the lapel camera video recording violated her right against self-incrimination. Defendant's theory is that because the district court suppressed her statements based on a *Miranda* violation, it erred by admitting the recording, which she claims "shows her acknowledging ownership." Because Defendant's argument "implicates important constitutional rights, including the Fifth Amendment right against self-incrimination," we review it de novo. *State v. Belanger*, 2009-NMSC-025, ¶ 8, 146 N.M. 357, 210 P.3d 783.

**{26}** Defendant relies exclusively on *People v. Whitfield*, 54 Cal. Rptr. 2d 370 (Ct. App. 1996). In *Whitfield*, a police officer asked the defendant whether she had drugs on her person, and the defendant "reach[ed] into her clothing, remov[ed] the cocaine and hand[ed] it to the officer[.]" *Id.* at 376. The court suggested in dicta in a footnote that the defendant's act of production was a testimonial act subject to *Miranda* protections, but the court decided the question presented on different grounds. *Id.* at 376 n.6. Even were we to find the *Whitfield* court's brief analysis persuasive, the facts of Defendant's case are not similar. Because the video recording in Defendant's case does not include any audio,[3] the jury did not hear anything Sergeant Yara said during the encounter, including any questions he might have asked Defendant. In addition, the video does not show Defendant producing the backpack that contained the heroin. Unlike the officer in *Whitfield*, Sergeant Yara did not receive drugs directly from Defendant. Sergeant Yara found the backpack sitting near Defendant in the alcove. The admission of the recording did not violate Defendant's constitutional privilege against self-incrimination.

## V.    The Evidence Is Sufficient to Support Defendant's Conviction

**{27}** Defendant argues that the evidence is insufficient to support her conviction for possession of heroin. Specifically, Defendant contends that "it is equally likely that the backpack belonged to the man [she] had been seen with" shortly before Sergeant Yara encountered her. We measure the evidence against the jury instructions that the district court gave. *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517. The district court instructed the jury as follows regarding the act of possession: "A person is in possession of heroin when she knows it is on her person or in her presence, and she exercises control over it. . . . A person's presence in the vicinity of heroin or her knowledge of the existence of the location of the heroin is not, by itself, possession."

**{28}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted).

---

3 The district court ordered the audio removed because it suppressed Defendant's statements.

**{29}** The State's evidence of possession and knowledge was sufficient under our deferential standard of review. Sergeant Yara testified, and the video recording confirmed, that he encountered Defendant sitting alone in an alcove in an alleyway. He testified that the alcove was approximately six feet wide and four feet deep. When Sergeant Yara approached Defendant, he noticed she was hiding something. After he asked her to move away from what she was hiding, he discovered syringes, and two spoons, one of which contained a brown watery substance that Sergeant Yara recognized as heroin, along with the backpack that contained the heroin that the State charged Defendant with possessing. The backpack was "within arm's reach of her." From this evidence, a jury could reasonably infer that Defendant knew that the heroin in the backpack was in her presence, that she exercised control over it, and that she intended to possess it. That suffices for possession under the instructions given. It was within the province of the jury to reject Defendant's argument that the backpack and the heroin inside belonged to the man with whom she had been seen and to instead conclude that those items belonged to Defendant. The jury instructions did not require the State to prove ownership. Even if the jury concluded that Defendant did not own the backpack and the heroin, it could also have reasonably concluded that she possessed them.

**{30}** To accept Defendant's sufficiency argument, we would have to "reweigh the evidence" and "substitute [our] judgment for that of the jury[,]" which we must not do. *State v. Sutphin*, 1988-NMSC-031, ¶ 23, 107 N.M. 126, 753 P.2d 1314. The evidence is sufficient to support the conviction.

## VI.    The District Court Did Not Err by Denying Defendant's Motion for Mistrial

**{31}** Defendant argues that the district court abused its discretion by denying her motion for mistrial. When Defendant moved for a mistrial, she bore the burden of "show[ing] that the error committed constituted legal error, and the error was so substantial as to require a new trial." *State v. Smith*, 2016-NMSC-007, ¶ 69, 367 P.3d 420. We will reverse the denial of a mistrial only if we conclude that the district court abused its discretion. *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516. A court "abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016 (internal quotation marks and citations omitted).

**{32}** Defendant contends that a mistrial was necessary because (1) the prosecutor commented on her silence; (2) Sergeant Yara testified that the substance in the backpack field tested positive for heroin; and (3) Sergeant Yara testified that the substance in the spoon field tested positive for heroin. We address each point in turn.

**{33}** First, the record does not support Defendant's argument that the prosecutor commented on her silence. The prosecutor never asked a question or made any comment about Defendant asserting her right to remain silent. Defendant relies entirely on the prosecutor's question to Sergeant Yara about why audio had been removed from

the video. Sergeant Yara did not answer that question because defense counsel objected. Defendant cites no authority to support her assertion that these circumstances or any remotely similar circumstances amount to a comment on silence. We therefore assume no such authority exists. *State v. Wyman*, 2008-NMCA-113, ¶ 6, 144 N.M. 701, 191 P.3d 559. Nor do we see any reason to equate a prosecutor's comment on silence with a prosecutor's unanswered question about the reason why a video recording has no audio.

**{34}** Second, Sergeant Yara's testimony that the substance in the backpack field tested positive for heroin was not prejudicial. The testimony could not have had a prejudicial effect because the jury also heard expert testimony that the substance in the backpack tested positive for heroin in a laboratory. Testimony about the field test result that merely confirmed the positive lab test result could not have impacted the jury's verdict.

**{35}** Finally, Defendant cites Sergeant Yara's testimony that the substance in the spoon "was field tested and tested presumptive positive[.]" Sergeant Yara did not complete his answer because Defense counsel objected, and the district court sustained the objection. The jury never heard testimony that the field test was positive for heroin, as opposed to some other substance. Even if we assume that the jury inferred that the positive test was for heroin, we do not believe significant prejudice flowed from this testimony. Because the jury also heard evidence that Sergeant Yara recognized the substance in the spoon as heroin, the impact of the positive field test, if any, was marginal. In light of the other evidence that Defendant possessed the heroin in the backpack, we cannot say that the testimony about a positive field test on the substance in the spoon was so prejudicial that it warranted a mistrial. In addition, Defendant was not charged with possessing the substance in the spoon.

**{36}** The court could have reasonably concluded that any legal error was not "so substantial as to require a new trial." *Smith*, 2016-NMSC-007, ¶ 69. The district court did not abuse its discretion by denying the motion for mistrial.

## VII.  Admission of Spoon and Syringes

**{37}** Defendant argues that the district court abused its discretion by admitting the spoon and syringes. According to Defendant, this was evidence of prior bad acts, which is inherently prejudicial and which misled the jury because there was no admissible evidence that the substance in the spoon was heroin. *See* Rule 11-403 NMRA (providing that courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). We disagree. Defendant cites no authority for the proposition that evidence that a defendant possessed drug paraphernalia is prior bad acts evidence, and we therefore assume none exists. *Wyman*, 2008-NMCA-113, ¶ 6. Defendant has not explained how the admission of this evidence was unfairly prejudicial or misled the jury, and we do not identify any *unfair* prejudice. Nor has Defendant

attempted to weigh the probative value of the evidence against any prejudicial effect. Defendant has not persuaded us that the district court abused its discretion by admitting this evidence.

## VIII.   Correction of Conditional Discharge Order

**{38}**   Both the State and Defendant point out that the district court's order of August 29, 2017 incorrectly states that Defendant's conditional discharge was pursuant to NMSA 1978, Section 31-20-13 (1994), the general conditional discharge statute. The parties agree that the district court actually granted the conditional discharge under Section 30-31-28, which applies only to drug possession charges. The record confirms that the parties are correct. We instruct the district court to correct this error.

## CONCLUSION

**{39}**   We affirm and remand for the district court to correct the error in its order of August 29, 2017.

**{40}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**